SMITH et al. v. STATE ex rel. GALLAHER, Co. Atty.

No. A-2010.   Opinion Filed September 18, 1916.

(159 Pac. 941.)

1.   **CONTEMPT—Intoxicating Liquors—Abatement of Nuisances—Punishment for Contempt—Jurisdiction.**  (a) District courts have jurisdiction of injunction proceedings to abate as a nuisance places where persons congregate and resort for the purpose of drinking intoxicating liquor.

(b) The court alone in which a contempt is committed, or whose order or authority is defied, has power to punish it, or entertain proceedings to that end. Courts which have no criminal jurisdiction can punish for so-called criminal contempt, because the power to do so is inherent, and necessary to the efficiency and very existence of the court.

2.   **INJUNCTION—Temporary Injunction—Nature of.**  There is a wide distinction between a temporary injunction and a temporary restraining order. The former embodies a restraint which continues, unless modified by the court, until the hearing of the cause, and then it is either made permanent or discharged altogether; while the latter, strictly speaking, is not an injunction at all, but an order of the court, to compel parties to maintain the matters in controversy in statu quo, until the question of whether or not a temporary injunction ought to issue may be determined.

3.   **FINES—Imprisonment—Credit on Fine.**  Where an offense was committed before section 1, c. 112, Sess. Laws 1913, went into effect, a defendant is allowed credit on his fine, if laid out in jail, as provided by the Revised Laws 1910.

4.   **WITNESSES—Examination of Witnesses—Conduct of Counsel—Rebuke.**  There is no rule or reason why a trial judge should not ask a proper and pertinent question, for the purpose of eliciting competent and material testimony; yet it is improper for him to assume the role of prosecutor, and persistently examine and cross-examine witnesses. No matter what his motives may be, or what explanation or excuse he may offer for this course, it can have but one effect upon the jury; and that is to place the judge in a hostile attitude toward the defendant, and discredit any defense he might offer. No trial judge has a right to indicate to the jury, by word or action, his opinion as to the merits of a case being tried, or as to the credibility of any witness examined.

If the conduct of counsel for defendant is improper, the court must excuse the jury before administering a rebuke or threatening to fine or imprison him for contempt.

*Error from District Court, Wagoner County;*
*R. C. Allen, Judge.*

Proceeding by the State of Oklahoma, on the relation of Edward M. Gallaher, County Attorney of Wagoner County, against W. C. Smith and C. W. Norman, to abate a nuisance. Defendants were convicted of contempt, and they bring error. Reversed.

*Watts & Watts and·Edward M. Gallaher,* all of Wagoner, for plaintiffs in error.

*Chas. West,* Atty. Gen., and *C. J. Davenport,* Asst. Atty. Gen., for the State.

BRETT, J.   On August 14, 1911, Edward M. Gallaher, who was then county attorney of Wagoner county, filed a petition on behalf of the state in the district court of Wagoner county, alleging that a certain building in the city of Wagoner known as the City Drug Store, and located on certain lots described in the petition, was owned jointly by one J. M. Livingston and T. A. Parkinson, and that one J. F. Studyvin and Frank Barnes were occupying and operating a drug store in said building, and that in this building intoxicating liquors were being kept and sold, and divers persons congregated and resorted there for the purpose of buying and drinking such intoxicating liquors, and asked that a temporary injunction be granted enjoining each and all of said defendants, their agents, successors, and assigns, and all other persons, from illegally handling intoxicating liquors, on said premises, and that upon final hearing said place be adjudged a public nuisance, and be perpetually abated. Summons was duly issued, and on the 14th day of August, 1911, a temporary injunction was granted enjoining the defendants, their agents, servants, employes, successors, or assigns, and each of them, and all other persons, from keeping, selling, or permitting to be sold any intoxicating liquor upon said premises, etc. This order was served upon each of the defendants on the 15th day of August, 1911, by the sheriff delivering to each of them a copy of the order.

The matter then seems to have remained in statu quo until the 24th day of March, 1913, when C. E. Castle, who had succeeded Gallaher as county attorney, filed an affidavit reciting the terms of the temporary injunction, and alleging that W. C. Smith, who succeeded the former occupants of the building, had violated the terms of the injunction, and praying that he be adjudged guilty of contempt. An attachment for contempt was issued, and Smith brought before the court to answer the charge of contempt in violating said injunction. And on April 17th, and while the contempt proceedings were still pending, the county attorney filed a supplemental affidavit charging that W. C. Smith and C. W. Norman entered said premises with full knowledge of the existence of this injunction and its terms, and that they, and each of them, willfully and contumaciously refused to respect and obey said injunction, and charged in detail the dates upon which and the persons to whom defendants had sold intoxicating liquors in violation of said injunction, and asked that they be required to show cause why they should not be punished for contempt on account of the violation of said injunction. An order to show cause was then duly and properly issued.

The defendants demurred to the supplemental affidavit, which was overruled. Thereupon they filed an affidavit denying the allegations of the supplemental affidavit of the county attorney, and on the same day filed a response to the order to show cause.

On April 22, 1913, the matter came on for hearing, and was tried to a jury, which returned a verdict finding each of the defendants guilty of contempt.

A motion for new trial was heard, and overruled, and the court fixed the penalty of each of the defendants at a fine of $300 and six months in the county jail. And to reverse this judgment an appeal has been perfected to this court. There are numerous assignments of error urged, all of which it will not be necessary for us to consider.

1.   The first assignment is that the district court had no jurisdiction of the subject-matter of the action:   (1) Because the district court was without authority to enjoin the sale of intoxicating liquors; and (2) because the penalty fixed by the statute for this class of contempt, reduces the offense to that of a misdemeanor, and the county court has exclusive jurisdiction of misdemeanors.

(a)   Both contentions urged under this assignment are without merit.   The authority of the Legislature of this state extends to all rightful subjects of legislation; and it is clearly within the province of the Legislature to declare certain things to be a public nuisance, and to provide a remedy for the abatement of the same.   And the provisions of the statute which declare all places where persons congregate or resort for the purpose of drinking intoxicating liquors to be a public nuisance, and that such places may be abated by injunction, is within the authority granted the Legislature by the Constitution of the state, and the district courts or judges thereof have jurisdiction to hear and determine such actions.

(b)   And in *Nichols v. State,* 8 Okla. Cr. 550, 129 Pac. 673, this court passed squarely upon the second contention urged under this assignment, and held that the contention is without merit. To hold that a court must look to an inferior tribunal to enforce its orders and decrees would be ridiculous.   As is stated in *Nichols v. State,* supra:

"The power to fine and imprison for contempt is a necessary attribute of a court.   It is a power inherent in all courts of record, and coexisting with them by the wise provisions of the common law.   A court without the power to enforce its orders, judgments, or decrees would be a disgrace to the laws which created it.   Such a condition could but result in the degradation of courts, and to make them truly subjects of contempt."

No court could exist, or, if existing, would be a curse rather than a blessing, if stripped of the power to enforce its orders, judgments, and decrees.   Hence it is the universal rule that even courts of chancery and other courts which have no criminal juris-

diction can punish for so-called criminal contempt, because the power to do so is inherent, and necessary to the efficiency and very existence of the court. And as stated in *Rapalje on Contempt,* par. 13 :

"It is a well-settled rule that that court alone in which a contempt is committed, or whose order or authority is defied, has power to punish it, or to entertain proceedings to that end. * * * The highest court of a state will not punish a contempt offered to the processes or authority of an inferior tribunal."

And with much less reason could it be urged that the highest court of original jurisdiction in the state must look to an inferior tribunal to enforce its orders and decrees.

2. It is also contended that the injunction the defendants are alleged to have violated was a temporary restraining order, and when no hearing was had upon it, on September 14, 1911, the date fixed in the summons as answer day, it spent its force, and was therefore a nullity at the time the defendants are alleged to have violated its terms. But this contention is not borne out by the record. This, as is shown by the record, is not a temporary restraining order, but a temporary injunction. And *Ex parte Grimes et al.,* 1 Okla. Cr. 102, 94 Pac. 668, cited and relied upon by the defendants, does not support their contention. In that opinion the court makes the distinction between a temporary injunction and a temporary restraining order, saying :

"The former embodies a restraint which continues, unless modified by the court, until the hearing of the cause, and then it is made either permanent or discharged altogether; while the latter, strictly speaking, is not an injunction at all, but a writ of the court to compel parties to maintain the matters in controversy in statu quo until the question of whether or not a temporary injunction ought to issue may be determined."

This distinction is clear and sound, and is a complete answer to the contention of the defendants. This was a temporary injunction, and consequently remained in force until a hearing should be had for the purpose of making it perpetual, or discharging it altogether. And the defendants had a right to insist upon a speedy hearing, if they felt the injunction should be dissolved.

3.    There is also an assignment to the effect that the judgment imprisoned the defendants, in case of a failure to pay the fine, until both fine and costs are paid as provided in section 1, c. 112, Session Laws 1913, and that this law did not become operative until a few days after the offense is alleged to have been committed; and therefore the penalty could not be assessed under its provisions. This judgment, however, does not include the costs in the sentence of imprisonment in case of failure to pay fine, but does allow only $1 per day in case the $300 fine is laid out in jail. This is error, since the offense is alleged to have been committed prior to the date the 1913 law became operative, and the defendants should have been sentenced under the statutes in force at the time the offense was committed, which allowed $2 on the fine for each day of imprisonment, and $1 additional for each day the defendants performed labor. *Ex parte Harry,* 6 Okla. Cr. 168, 117 Pac. 726; *Turner et al. v. State,* 8 Okla. Cr. 11, 126 Pac. 452.

4.    Another matter complained of is the conduct of the court during the trial of this cause.

(a)    It appears from the record that the judge, over the objections of counsel for defendants, persisted in rigidly examining and cross-examining the witnesses placed upon the stand, and at one time delivered to the jury a lengthy statement as to the position he occupied in the trial of that case, and at another time severely rebuked counsel for defendants in the presence of the jury, threatening to summarily punish him for contempt; and at the close of the examination of a witness that the court had taken from the county attorney and examined himself he remarked: "I think that is all this witness knows." All this was highly improper.

We know of no rule or reason why a court should not ask a proper and pertinent question, for the purpose of eliciting competent and material testimony. But we also know of no rule that would permit the court to assume the role of prosecutor. And when the court takes the place of the county attorney, and exam-

ines and cross-examines witnesses, no matter what his motives may be, or what explanation or excuse he may offer for this course, his conduct can have but one effect upon the jury, and that is to impress them that the judge is convinced of the defendant's guilt. In the minds of the jurors, it places the judge in a hostile attitude towards the defendant, and discredits any defense that he might offer. No judge has a right to indicate to the jury, by word or action, his opinion of the merits of any case being tried before him, or to in any way indicate his opinion as to the credibility of any witness examined. Absolute fairness should characterize every word and action of a judge. *Harrison v. State,* 11 Okla. Cr. 14, 141 Pac. 236, and cases therein cited.

(b) Besides, to reprimand counsel for a defendant, in the presence of a jury, is highly prejudicial. If counsel's conduct is improper, the court must excuse the jury before administering a rebuke, or threatening to fine or imprison him for contempt.

There are other assignments, but, as the case must be reversed by reason of the conduct of the judge, we deem it unnecessary to pursue the matter further.

The judgment is reversed.

DOYLE, P. J., and ARMSTRONG, J., concur.