(No. 12757.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ZEBEDEE STONEKING *et al.* Plaintiffs in Error.

*Opinion filed October 27, 1919.*

1. CRIMINAL LAW—*when a judgment of conviction will be reversed on evidence.* While a reviewing court must give due weight and importance to the verdict of the jury, yet where the evidence fails to establish guilt beyond a reasonable doubt it is the duty of a reviewing court to reverse a judgment of conviction.

2. SAME—*record should be free from error where evidence is close.* Where the evidence tending to establish the guilt of the defendant in a criminal case is close, the record should be free from substantial error.

3. SAME—*when it is imperative that the jury be accurately instructed.* Where the evidence of guilt is not such that all honest minds of ordinary intelligence must necessarily come to the same conclusion, the accused is entitled to have the jury instructed with substantial accuracy.

4. SAME—*instruction that defense of alibi merely creates a reasonable doubt is improper.* An instruction implying, as a general proposition, that the defense of *alibi* tends merely to cast a reasonable doubt upon the case made by the prosecution is improper, as that defense controverts the guilt of the defendant and when satisfactorily established is conclusive of his innocence.

WRIT OF ERROR to the Circuit Court of McDonough county; the Hon. HARRY M. WAGGONER, Judge, presiding.

MILLER & WALKER, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ANDREW L. HAINLINE, State's Attorney, and ALBERT D. RODENBERG, (JOHN E. LAWYER, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Zebedee Stoneking and Robert Stoneking were convicted in the circuit court of McDonough county of the crime of burglary and were sentenced to the penitentiary. They urge a reversal of this judgment on the grounds that the evidence does not show them guilty of the crime beyond a reasonable doubt and that the court erred in the giving and refusing of instructions.

There are two uncontroverted facts in the record. The one is, that about two o'clock on the morning of July 3, 1918, the chicken house of James Wright was entered and six chickens stolen therefrom; and the second is, that about three o'clock on the same morning a Ford automobile belonging to Zebedee Stoneking was found in the highway about sixty rods north of Wright's house. The question of fact presented is, who entered Wright's chicken house? Furthermore, if the party or parties who entered the chicken house abandoned the automobile in the highway, then the question is, who drove the automobile there?

James Wright lived on a farm about seven miles southeast of the city of Macomb. He was awakened some time before two o'clock on the morning of July 3, 1918, by the squawking of chickens. He got up and looked out of the window in the direction of the chicken house and by the light of the moon he saw a man coming out of the chicken house with a sack. He and his hired hand, Lloyd Snyder,

went out to the barn lot and saw a man flash a light into a shed near by. Snyder brought the shotgun and Wright fired a shot and they heard the thief or thieves running away. They found the sack which had been dropped by the thief and it contained six chickens. The sack was one of three that had been hanging in Wright's barn and was tied with a strip torn from an old jacket hanging near the sacks. Wright saw one man when he looked from his bedroom window and he saw one man when the light was flashed in the shed. Snyder did not see anyone but he heard the running, and said that it sounded to him as if two men were running. Neither Wright nor Snyder followed up the party or parties who were running away and did not see any more of them. Wright telephoned the sheriff, James Barclay, and he came out from Macomb, arriving near Wright's farm about three o'clock A. M. It was he who discovered the Ford automobile standing in the highway, about sixty rods north of Wright's house. He inspected the car and made a memorandum of the license number and then went to Wright's house and was there for more than an hour. Wright did not tell the sheriff whom he had seen stealing his chickens. When the sheriff returned to his office he consulted the list of licensed automobiles furnished by the Secretary of State and learned that the automobile standing in the highway north of Wright's farm was the property of Zebedee Stoneking. He drove to the Stoneking home and inquired for Zebedee. The latter came to the door barefooted and dressed only in his shirt and overalls. When asked by the sheriff where his car was, he turned and looked in the direction of a tree under which he was accustomed to leave his car and said, "My car is gone, isn't it?" Upon further inquiry he learned that the sheriff had located his car at the Wright farm, and shortly afterwards he secured a car and drove out to the farm and got his car. Wright went to town that morning and in the afternoon caused a warrant to be is-

sued for the arrest of Zebedee Stoneking and his brother, Robert Stoneking, for this offense.

The defendants have at all times maintained that they drove to Good Hope, a village about eight miles north of Macomb, during the early part of the evening of July 2 and that they reached home about midnight; that they drove the car into the yard under the tree where they were in the habit of leaving it and went to bed. They so testified at the trial. On behalf of defendants, Daisy Marshall, a neighbor, testified that she saw them pass under the street light and drive into their mother's yard at about twelve o'clock. She fixed the time by the fact that she was returning from the home of her brother-in-law, where she had participated in a joint birthday party for him and her little daughter. Mary Stoneking, the mother of defendants, testified that she heard the boys come in just before twelve o'clock and heard them talking in their bed-room. On behalf of the People, Myrtle Brown, William Carstens and William Rhoades, all close neighbors of the Stonekings, testified that they could always hear the car when it was running but that on this night they did not hear the car come in nor go out of the yard. Defendants insist that they left the car in the yard at midnight, and that some time between that hour and three o'clock in the morning the car was stolen and driven to the point near Wright's home. This is substantially all of the evidence that was received on the trial.

It will be seen that there is no evidence in the record connecting Robert Stoneking with this burglary, and that the only evidence in the record connecting Zebedee Stoneking with the burglary is the fact that his car was found in the highway, within sixty rods of the scene of the burglary, within an hour after the burglary was committed. There is also the statement of Wright to the effect that he thinks Zebedee Stoneking is the man he saw coming from his chicken house, but he admits that this impression was

fixed in his mind after he learned that the deserted automobile belonged to Zebedee Stoneking.

A reviewing court should give due weight and importance to the verdict of the jury, and judgments of conviction will not be reversed simply because the evidence is conflicting. Where, however, the whole evidence considered, it fails to establish guilt beyond a reasonable doubt it is the duty of a reviewing court to reverse the judgment. (*People* v. *Freeland,* 284 Ill. 190.) The opportunity of seeing the witnesses when they testify peculiarly fits the jury to decide controverted questions of fact. We recognize that the conduct and demeanor of a witness on the stand and his action under cross-examination have a strong bearing upon the weight to be accorded his testimony. We will not set aside a verdict of guilty in a criminal case unless the testimony is palpably against the weight of the evidence or harmful error in the ruling of the court has taken place on the trial. But where the evidence is close, as it is in this case, the record should be free from substantial error. (*People* v. *Cassidy,* 283 Ill. 398.) Where the evidence is so overwhelmingly against the defendant that, regardless of the error in instructions, the jury must necessarily find the defendant guilty, we will decline to reverse for mere error of instruction, but where the evidence of guilt is not such that all honest minds of ordinary intelligence must necessarily come to the same conclusion after proper consideration, the accused is entitled to have it passed upon by a jury instructed with substantial accuracy as to the law applicable to the case. *People* v. *Pezutto,* 255 Ill. 583.

Complaint is made of the giving of the following instruction:

"The court instructs the jury, as a matter of law, that where the People make out such a case as would sustain a verdict of guilty, and the defendants offer evidence, the burden is on them to make out that defense, and as to an

*alibi* and all other like defenses that tend merely to cast a reasonable doubt on the case made by the People when the proof is in, then the primary question is, the whole evidence being considered, both that given for the defendants and for the People, are the defendants guilty beyond a reasonable doubt? The law being that when the jury have considered all the evidence, as well that touching the question of the *alibi* as the criminating evidence introduced by the prosecution, then, if they have any reasonable doubt of the guilt of the accused of the offense with which they stand charged, then they should acquit, otherwise not."

This is the identical instruction discussed and criticised in *Ackerson* v. *People,* 124 Ill. 563. We there held that it is not true, as a general or a legal proposition, that the defense of *alibi* tends merely to cast a reasonable doubt upon the case made by the People. That may, and will in many cases, be the only effect of the evidence produced to sustain the *alibi.* But the defense of *alibi* controverts the guilt of the defendant, and if certainly and satisfactorily established would be conclusive of the defendant's innocence. While in theory it does not deny that the crime has been committed, it asserts that the defendant, during the whole of the time in which the crime is shown to have been committed, was so far removed from the place of its commission that he could not have participated in its perpetration. (*Miller* v. *People,* 39 Ill. 457.) Such has been the holding of this court for more than fifty years. An instruction in all respects like the one in question was again condemned in *Sheehan* v. *People,* 131 Ill. 22. Again in *People* v. *Lukoszus,* 242 Ill. 101, we held that the giving of this instruction was error, and said that after defects in an instruction have been pointed out it should not be given, although it may not have been considered ground for reversing a judgment in the particular case. In spite of the repeated holdings of this court the same instruction was again presented in *People* v. *Blair,* 266 Ill. 70, and we

there said: "Although it is possible that an antidote may be found elsewhere for a hurtful statement which is not the law, an instruction repeatedly condemned by this court should not be given." This case does not present the problem of deciding who tells the truth when the testimony of one set of witnesses contradicts the other. The jury might have disbelieved the defendants and their mother, Mary Stoneking, and their neighbor, Daisy Marshall, as against testimony for the People positively disputing their statements, but the People have presented no such testimony. There is no material conflict in the evidence. Everything testified to by the witnesses for the People may be true and yet not show the testimony of the defendants and their witnesses to be untrue. The fact that the neighbors did not hear this car come in nor go out of the yard does not prove that it was not driven in nor that it was not pushed or driven out. Taking every statement of the People's witnesses to be true, there is no evidence in the record connecting Robert Stoneking with this burglary and the evidence is exceedingly close to sustain a conviction of Zebedee Stoneking. In view of the character of the evidence we do not think that the insertion of the last sentence in this instruction, nor the rule that the instructions should be taken as a series, neutralizes the harm that may have been done by that portion of the instruction which has been so repeatedly condemned by this court. The giving of this instruction was reversible error.

Objections are urged to the giving of other instructions for the People and for refusing and modifying instructions offered by the defendants, but in view of our holding we do not consider it important to discuss these objections.

The judgment of the circuit court will be reversed and the cause remanded.                    *Reversed and remanded.*