(No. 14106.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK C. SCHULTZ, Plaintiff in Error.

*Opinion filed December 22, 1921.*

1. CRIMINAL LAW—*what remark by the court is not prejudicial.* On a trial for burglarizing a garage, where considerable evidence as to the numbers on the stolen car has been given and the admission of certain additional documents to prove such numbers is being contested, a remark by the court to the effect that the State's attorney had "enough besides that" is not prejudicial, as indicating that the court thought there was sufficient evidence to convict the defendant of burglarizing the garage.

2. SAME—*trial judge should not conduct an extensive examination of witnesses.* The examination of witnesses is the function of counsel, and the instances are rare which will justify the presiding judge in conducting an extensive examination, but as it is the duty of the judge to see that all the truth is brought out it is sometimes necessary for him to ask questions, although it is better practice to suggest to counsel what information is desired and let counsel question the witness.

3. SAME—*trial judge should exercise care that his conduct does not influence the jury.* It is necessary for judges presiding at trials to exercise the greatest care in what they say and do in the presence of the jury, lest they give the jury the impression that they favor one side or the other.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding.

JAMES F. FARDY, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (CLYDE C. FISHER, EDWARD E. WILSON, and HENRY T. CHACE, JR., of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Frank C. Schultz, was convicted in the criminal court of Cook county of the crime of burglary and sentenced to the penitentiary for an indeterminate period within the maximum provided by law. He seeks to reverse that judgment on the following grounds: (1) Erroneous rulings of the trial judge in the admission and exclusion of evidence; (2) improper remarks by the trial judge; (3) error by the trial judge in examining at length plaintiff in error while he was testifying as a witness; and (4) that the guilt of plaintiff in error is not established by competent evidence beyond a reasonable doubt.

The crime for which plaintiff in error was convicted was the larceny of an automobile from the garage of the Vulcanite Roofing Company. James W. Quigley, superintendent of the company, testified that this automobile, a 1920 model Dodge sedan, was in the garage of the company Saturday, April 17, 1920, and was gone the following Monday. He found the garage door open and found marks on the edge of the door made by some instrument used to force the door open. May 24 following, two police officers went to the home of plaintiff in error about three o'clock in the afternoon. At the rear of his premises they found a garage, in which they saw a car. The garage was locked. Plaintiff in error was not at home and the officers left. About 6:15 they returned and found plaintiff in error at his house. They called him out and asked him about the car in his garage. He replied that there was no car there. They told him that they had seen a car in the garage about three o'clock, and he replied, "Oh, yes; a man on the next street put a car there." When the officers inquired the name of the man and suggested that they go over to see him, plaintiff in error replied that he did not know his name and did not know just where he lived, but that he had gone to California and he did not know when he would be back.

They told plaintiff in error to unlock the garage, and he replied that he had left his keys in some overalls at a house some distance away. The officers insisted on seeing the car, and he helped them to pry open the back door of the garage, in which they found a 1920 model Dodge sedan. It bore no State license numbers. The officers looked for the engine number and found that the number on the motor block had been changed. The number then on the block was 485687. An inspection of the duplicate secret number, which is under one of the motor legs that holds the motor block in place, showed that the original number was 483685. The serial number of this car was 431597. The officers took the automobile and plaintiff in error to headquarters. The following morning the plaintiff in error told officers Maimes and Wolfe, the officers who had made the arrest, that he had worked for the Vulcanite Roofing Company from December to March and that he had seen this Dodge sedan in the garage of the company while he worked there. He told them that he wanted a nice closed car for his mother to ride in and that his fingers began to itch and that he went to the garage and took the car. The officers notified Quigley to come down to headquarters to identify the car. Quigley came down and identified the car by its general appearance and by the serial and engine numbers, a memorandum of which he had taken from the bill of sale. He was not told who was under arrest for the theft, but as soon as he saw plaintiff in error he recognized him as a former employee. He said to plaintiff in error, "I am surprised to see you here; did you take this car?" and plaintiff in error replied, "I did, but there will be others mixed up in it before I get through." Quigley directed that the car be taken to the Dasheel Motor Company, the agency from which his company purchased the car in February. Employees of the motor company identified the car by serial numbers as the car which they had sold and delivered to the Vulcanite Roofing Company about three months before.

An employee of the roofing company identified the car by two T-shaped dents in one of the front fenders and by the condition of one of the rear doors, which had been broken off and repaired.

Plaintiff in error testified that he had leased the garage to a man by the name of Edward Barrett and that this car was placed in the garage by Barrett; that he had known Barrett for more than a year; that Barrett was a dealer in second-hand cars; that during the time of his acquaintance he had purchased a car from Barrett but had re-sold it; and that Barrett had agreed to pay him $7 as rent but that he had never paid him anything. He denied admitting to Quigley or the officers that he stole the car, and he denied that he had taken the car from the Vulcanite Roofing Company's garage or that he had ever had it in his possession. He produced witnesses who testified that his general reputation for honesty was good.

During the examination of Quigley the State's attorney asked, "Will you state, if you know, what the motor number was of this car?" and Quigley answered, "Engine number 483685, serial number 431597; it is the same car I described in my testimony and belonged to the Vulcanite Roofing Company." On cross-examination it developed that Quigley had never seen the numbers on this car and that his information regarding them was obtained from the bill of sale. There was considerable controversy as to whether he had obtained the numbers from the original bill of sale or from a copy of it. Counsel for plaintiff in error finally made a motion to strike all the testimony of Quigley with reference to the identity of the car. The court is quoted in the brief of plaintiff in error and in the abstract as saying: "For the present the court will remember the motion. So far as the numbers are concerned, the other testimony is complete independent of the numbers." If this had been the ruling and the statement of the court it would have been serious error, because one of the con-

troverted questions of fact was the identity of the car, and the court had no right to express its opinion on the weight of the evidence within the hearing of the jury. An examination of the record, however, shows this to be the statement of the court: "For the present the court will remember the motion. If the State does not make some other connection before they get through, the motion will be allowed so far as the numbers are concerned. The other testimony is competent independent of the numbers." This ruling was clearly correct and preserved all the rights of plaintiff in error.

During the examination of one of the police officers the State's attorney asked, "Did Mr. Quigley come down?" and the witness answered, "They notified him to come; he came down and identified the car." After the witness had answered, an objection was made to the question and the court overruled the objection. The last part of the answer was not responsive and was a conclusion of the witness, but there was no motion to strike the answer, and the question is not preserved for review. Further on in the examination the following questions and answers appear:

Q. "Have you as police officers received the numbers of cars stolen?

A. "Yes, sir.

Q. "Was the number of this car one of the numbers of stolen cars?

A. "Yes, sir."

After this last answer had been given the attorney for plaintiff in error interposed a general objection, which was overruled. The questions were improper, but no objection was made to them before they were answered, and the trial court had no opportunity to prevent their being answered. There was no substantial error committed by the court in his rulings on the admission and exclusion of evidence.

Near the close of the People's case in chief the State's attorney offered in evidence what he termed the original

record of the Dasheel Motor Company, which purported to show the numbers of the car sold by that company to the Vulcanite Roofing Company. Considerable controversy took place between counsel for both parties and the court with respect to the admission of this document. Finally the State's attorney said, "We are trying to show the numbers of the car," and the court replied, "You have got enough besides that." Plaintiff in error contends that this was an intimation to the jury that the court thought there was sufficient evidence to prove defendant guilty and that there was no necessity of introducing anything further. We do not think that this construction can be placed on the language of the court. It was plain to everyone present that the controversy was about introducing additional evidence regarding the number of the car sold by the Dasheel Motor Company to the Vulcanite Roofing Company. Employees of the motor company had testified directly on this question, and the court's remark to the State's attorney clearly meant that inasmuch as the evidence of these employees was undisputed there was no necessity of introducing records to prove the same thing. We are unable to see how any harm could have come to plaintiff in error by this remark.

It is further urged that the court erred in examining plaintiff in error while he was on the stand as a witness in his own behalf. The court asked him about a half dozen questions regarding what he told the officers about the key to the garage when they came to inquire about the car, and at another time the court asked him a few questions regarding his arrangement with Barrett for the rental of the garage. From an examination of the questions asked and the answers given we do not see how the examination prejudiced plaintiff in error in any respect. All who are familiar with the trial of cases know that there is often much more effect in the expression of the examiner's face or the inflection of his voice than in the mere words used. The examination of witnesses is the function of counsel, and the

instances are rare and the conditions exceptional which will justify the presiding judge in conducting an extensive examination. In conducting an examination of any length it is almost impossible for the judge to preserve a judicial attitude. Jurors watch the trial judge closely and generally place great' reliance on what he says or does. They are quick to perceive any leaning of the court. Jurors naturally note every remark dropped by the court and every act done by him during the progress of the trial, and invariably they arrive at a conclusion as to what the court thinks about the case. Whatever is said or done by the trial judge is the subject of comment among the jurymen. It is therefore necessary for judges presiding at trials to exercise the greatest care in what they say and do in the presence of the jury lest they give the jury the impression that they favor one side or the other. It is the duty of the judge to see that all the truth is brought out so that the jury can arrive at a true verdict, and sometimes it is necessary for him to ask a question or two to clear up the situation. It is generally better for the court to suggest to counsel the additional information he would like to have brought out and let counsel further examine the witness. When the court asks a question and secures an answer, it, of course, renders unusual prominence to that question and answer and may unduly influence the jury in their verdict. While we do not approve of the trial judge examining the witnesses, we do not find that plaintiff in error was prejudiced by the judge in this trial.

We have examined all the errors assigned by plaintiff in error and find that he has had a fair trial and that the evidence shows him guilty beyond all reasonable doubt. The judgment is therefore affirmed.        *Judgment affirmed.*