(No. 15052.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JACOB STEINBUCH *et al.* Plaintiffs in Error.

*Opinion filed February 21, 1923.*

1. CRIMINAL LAW—*when conviction of robbery cannot be sustained notwithstanding identification.* A conviction of defendants of the crime of robbery cannot be sustained notwithstanding one of them is identified by the victim of the crime, who had never seen either of them until the night of the robbery, where other witnesses at least equally credible establish an alibi for the defendant claimed to have been identified, and in such case the Supreme Court must reverse the judgment and order a new trial.

2. SAME—*court should not conduct extensive examination of witnesses—review.* The examination of witnesses is the more appropriate function of counsel and conditions are rare which will justify the judge in conducting an extensive examination of them, but where counsel do not object to such practice the action of the court cannot be reviewed.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. MICHAEL L. McKINLEY, Judge presiding.

BENEDICT J. SHORT, and GEORGE GUENTHER, (THOMAS E. SWANSON, of counsel,) for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and GEORGE C. DIXON, (EDWARD E. WILSON, THOMAS F. REILLY, and CLYDE C. FISHER, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiffs in error, Jacob Steinbuch, Robert Poser and Thomas Hebson, were convicted in the criminal court of Cook county for robbery. Steinbuch was convicted of robbery with a gun and the other two for robbery, simply. Wilbur Moore was indicted jointly with plaintiffs in error, but at the conclusion of the evidence the indictment as to him was *nolled.*

The robbery was committed about two o'clock in the morning of January 29, 1922, in the yard of the Dempster Inn, which is located at the crossing of the Waukegan road, a north and south road, and Dempster avenue, which runs east and west. Edwin S. Black testified he, in company with a woman, drove to Dempster Inn about ten o'clock at night, January 28. They were in a two-passenger Dodge roadster, which had a winter top and side curtains. They parked the car about fifty feet from the inn, went in and remained there till about two o'clock in the morning. There were about thirty people in the inn and about a dozen cars parked in the yard. Black said he probably drank two or three high-balls. He testified he and his companion went to the car to leave about two o'clock in the morning, got in the car and while he was putting on his gloves the side curtain was broken in by a man who thrust a revolver against his head and ordered him to hold up his hands, which he did. Two men on the opposite side took his companion out of the car. The man with the gun continued to hold it on Black and told him to keep his hands up or he would plug him. The two men pushed the woman back in the car. The man with the gun, whom Black identified as Steinbuch, was on the running-board on Black's side of the car. After the woman was taken out of the car, one of the men on the opposite side of the car from the man who had the gun got into the car, went through Black's pockets and took from him $100 in money and some other property of smaller value. Then one of the men Black

could not identify got in the car with him and his companion, the man he identified as Steinbuch stood on the running-board on Black's side of the car and one man stood on the running-board on the opposite side. Black testified Steinbuch ordered him to drive west on Dempster road. He backed his car about fifty feet to Dempster road and then started to drive west. He had not driven more than twenty feet when he heard a shot, which appeared to come from three or four hundred yards in their rear, and Steinbuch said, "They have got Frank," and ordered Black to drive west as fast as he could. As we understand Black's testimony, at about the time the shot was fired one man jumped off the car. After one man had left the car the man who was in the car got out on the running-board. After Black had driven four or five hundred yards Steinbuch told him to stop and said to the other men they would go back and help him, meaning Frank. They jumped off the car and told Black to drive west as far as he could. Black reported the robbery to the police, and testified he was taken the next day to the station "and made to identify the men, if possible," who held him up. There were several detectives in the room and three or four men were marched by the witness and he was asked if he identified any of them. He did not say anything in the presence of the men brought in for identification but testified he identified Steinbuch as the man who broke through the curtain and held the gun on him. He was unable to identify any of the other men who took part in the robbery. The woman who was with Black did not testify.

William Strumm, a motorcycle policeman and deputy sheriff of Cook county, testified that he and his partner, officer Scfransky, who is now dead, about 2:30 in the morning were passing along the road in Scfransky's car and noticed a Hudson car about a block from Dempster Inn. It was parked on what is called the Old Telegraph road, about two hundred feet north of Dempster road, and

from the way it was parked and the fact that it had no lights it attracted their attention. . The witness went to the car. The doors were open but no one was in the car. He looked through it and found a revolver holster in it. He got in the car, started the engine and shut it off again. Officer Scfransky left him there, went back to Dempster road, got in his car and drove east. The witness concealed himself near the car, and in about five or ten minutes Poser came to the car, got in and tried to start it. Witness went to the car and ordered Poser to hold his hands up. Poser started to get out of the car backwards, holding up his left hand but put his right hand back toward his hip pocket, and the witness then shot him in the leg and placed him under arrest. Very shortly after, Scfransky came up in his car with Hebson. The witness said Poser told him they were out there with some girls; that the girls were walking around somewhere on the road or were at Dempster Inn. Witness took Poser in the Hudson car and Scfransky took Hebson in his car. They took Poser to a hospital to have his wound attended to, and from there took both Poser and Hebson to the police station. The Hudson car belonged to Steinbuch, and he was arrested at his home about five or six o'clock in the morning and taken to the police station.

All three of the plaintiffs in error testified in their own behalf and denied having anything to do with the robbery or knowing anything about it. Hebson testified he lived in Evanston with his wife and child. He had lived there all his life. He is a bricklayer, employed by the McElligott Construction Company, of Evanston, and had been so employed several years. After supper the evening of January 28 he went to a barber shop and got shaved. After leaving the barber shop he saw Poser driving a car and hailed him. He got in the car to take a ride and they drove to Burgess' place, where they remained about fifteen minutes and had a glass of beer. The car they were in belonged to Steinbuch, who is a brother-in-law of Hebson.

From Burgess' place they drove to Wheeling, which we understand is several miles from Evanston. They arrived there about ten o'clock and stayed three-quarters of an hour and then started toward home. On the way back they stopped at Ray's Bungalow, on Milwaukee road, and remained about three-quarters of an hour. They then drove from Milwaukee road to Dempster road and stopped in the Shermanville road, (which we understand is the same as the Old Telegraph road,) about twenty feet off the road. Poser got out and went behind a barn to answer a call of nature, and he stayed around the car. Two men came up to the car and ordered him to put his hands up. They searched him and told him to get in the car. They took him to the Dempster Inn and then turned around and went back. He stayed in the officer's car. They took him back to the Hudson car. Poser was there. They told witness to get out of the car. Poser said, "This fellow shot me." Witness asked what he shot him for, and Poser replied, "He shot me for nothing." Witness asked the officer to get him in a car and take him to a hospital. Poser got in the Hudson car and one of the officers drove it. Witness got into the officer's car and they went to the St. Francis Hospital, in Evanston, and from there to the police station. The officer searched him. He had not been to the Dempster Inn that night. He thought it was about one o'clock when the officer arrested him. He had never seen Black, did not hold him up or see anyone else do it. When the officer arrested him he asked if he could go home, and the officer said, "No; I have to make a charge against you, because I shot this man Poser, and the authorities at the hospital will make a report." Nothing was said to him that night about anyone being held up and robbed. There was no gun in the Hudson car. He had no knife, had about seven cents in money, and knew nothing of any girls walking about Dempster road. He never saw Steinbuch that evening.

Poser testified that on the afternoon of January 28 Steinbuch asked him to come to his garage to give his car an overhauling, clean out the carbon and grind the valves. He is an automobile mechanic and was employed by the Plaza Auto Sales Company. He went to Steinbuch's garage that afternoon, worked on the car until about six o'clock, ate his supper at Steinbuch's house and then took the car and drove it to try it out. While driving he saw Hebson on the street and Hebson got in the car with him. They drove to Burgess' place, had a drink and then drove to Wheeling. He was not acquainted in that neighborhood and Hebson drove the car to Wheeling. They stopped at a couple of places about three-quarters of an hour and then started toward home. On the way back they stopped at a roadhouse, and after leaving there witness had to go to a toilet. They pulled the car off the road and parked it. The rear lights were not burning. He went away and Hebson stayed at the car. He was gone about five or ten minutes. When he came back Hebson was not there. He called him, and the officer jumped out of concealment and ordered him to throw up his hands. He did so and the officer shot him. He said it was somewhere near one o'clock in the morning. He was taken to a hospital, then to the police station and later to the Cook County Hospital. No one was with him during the night but Hebson. Steinbuch was not with them, and he did not tell the officers they were with some girls. He did not hold Black up and did not see anyone else do so. He was not on the running-board of Black's car. After the officer shot him he said he would have to put a charge against him to clear himself. He was not at the Evanston Hospital more than ten minutes.

Steinbuch testified he lived in Evanston with his family. He is a mechanic, employed by the McElligott Construction Company, in Evanston. He had lived in Evanston all his life. On January 28 he employed Poser to come to his garage that day to work on his car. Poser finished work

about six o'clock in the evening, had supper with Steinbuch, and Steinbuch told him to take the car and try it out. He had an engagement to go to the West End Pleasure Club, which is a private club. He arrived at the club ten or fifteen minutes after eight and played cards with three men he named until after one o'clock. He and the men he played cards with lived on the same corner, and after leaving the club they went to the place they resided, talked a little while and witness went up-stairs. He thought it was about eight or ten miles from the place where the club is located to the intersection of Dempster and Waukegan roads. He was not at Dempster Inn that night. He got home from the club about two or a quarter till two in the morning. He did not rob Black, did not ride in his car and was not in the neighborhood of Dempster Inn that night. He was arrested at his home the next morning about six o'clock.

Fred Bryant testified he lives in Evanston and has a small notion and drygoods store there. He had been there four years. He had known Steinbuch for ten or twelve years. They lived in apartments in the same building. On the evening of January 28 he saw Steinbuch at the West End Pleasure Club. He played cards with him, William Kidd and Elwood Tamble from about 8:30 to about 1:30. After the game broke up the four of them walked to the corner, half a block from the club house, in front of witness' place, where they talked a while,—perhaps fifteen or twenty minutes. Steinbuch bade them good night and went up-stairs. He stayed there with the other men a few minutes longer. He was with Steinbuch all evening and until after a quarter of two in the morning.

Elwood Tamble testified he lives in Evanston and is employed by the A. E. Wright Company. He knew Steinbuch about fourteen or fifteen years. He saw him at the West End Club about 8:30 P. M. January 28 and played cards with him, Kidd and Bryant until 1:00 or 1:30 in the

morning. They left the club house between 1:00 and 1:30, walked over in front of Bryant's store, talked a little while and then Steinbuch went up-stairs. It must have been a little past half-past one.

William Kidd testified he lives in Evanston. He had lived there about fifteen years and was acquainted with Steinbuch ten or eleven years. He saw him the night of January 28 about 8:30 at the West End Pleasure Club and played cards with him, Bryant and Tamble all evening. They played until about 1:30 and then started home. They all went in the same general direction, and Steinbuch left them at the place where he lived.

John McElligott testified he resides in Evanston and is in the contracting business. He went to school with Steinbuch and has known Hebson all his life. Both of them had worked for the witness' company several years. He testified he knew their reputation in the neighborhood they lived for honesty, sobriety and clean living and it is good.

John P. Powers, traffic manager of the Grease-Glager Tanning Company, had lived in Evanston thirty-nine years. He knew the defendants, and their general reputation in the neighborhood for honesty, sobriety and clean living was good. He had exchanged social calls with Hebson. Witness is an alderman of the city of Evanston.

Ben P. Boyce testified he lives in Evanston and is in the business of repairing automobiles. He has known Poser two or three years, and his reputation for honesty, sobriety and clean living is good.

Frank Picco testified he is in the automobile repair business in Evanston and has known Poser five years. Both had at one time been employed by the same employer. His reputation for honesty, sobriety and clean living is good.

The foregoing is the substance of all the material testimony as abstracted. There are certain distances, locations and directions which are important but which we have been unable to understand from the testimony as abstracted. We

have taken the pains and the time to read the record for
that information, and even the record is none too plain.
The best understanding we can get from the testimony is
that Dempster Inn is at the crossing of Dempster road and
Waukegan road and is approximately eight or ten miles
from Evanston.   Wheeling is further west than Dempster
Inn,—how far we cannot ascertain, but it is apparently
some miles.   The Old Telegraph road is a north and south
road and crosses Dempster road about a block west of
Dempster Inn.   It was on that road, about two hundred
feet north of Dempster road, the officers discovered the
Hudson car.   There where the Hudson car was standing
officer Strumm shot Poser.   The officer testified that oc-
curred about 2:30 in the morning of January 29.   Poser
and Hebson fixed the time at about one o'clock.   Black tes-
tified he had driven only twenty feet west after backing his
car into Dempster road when he heard a shot fired, which
he judged was three or four hundred yards in his rear.
There is no testimony of any other shot having been fired
or heard in that neighborhood at or near that time except
the shot fired by Strumm at Poser.   That shot was not in
Black's rear.   If that was the shot he heard it was in front
of him, and at the time it was fired Poser was at the Hudson
car, a block west of Dempster Inn, and Hebson was near
there.   It is not possible they could have been on Black's
car at the time Poser was shot.   The People admit Poser
did not actually take part in the robbery, but contend he
remained with the Hudson car for the purpose of aiding
his confederates in making their escape after the robbery.
Black testified when the shot rang out Steinbuch said,
"They have got Frank."   None of the parties charged with
the crime of robbing Black is named Frank.   Black's car
was only a few feet from the crossing of Waukegan and
Dempster roads when he heard the shot.   All the men who
actually took part in the robbery were there in the car or
on the running-board, and Black was ordered to drive west,

306—29

fast. One man jumped off the car and the others rode about four or five hundred yards before ordering the car stopped and leaving it.

We have endeavored to get a correct understanding of the testimony and set out its material substance, as the error principally urged and argued with great earnestness is that the evidence is too uncertain and inconclusive to warrant the verdict and judgment. Black positively identified Steinbuch as the man who held a gun on him. He said the man's face was in the opening he had broken through the curtain and the dash-light in the car made some light. Steinbuch was not seen by the officers who arrested Hebson and Poser and was found at his home in bed the next morning when arrested. He, Hebson and Poser all testified the Hudson car belonged to Steinbuch. In addition to the testimony of all three of them denying their guilt and accounting for their movements the night of January 28, all of them introduced testimony of apparently responsible men that they have a good reputation for honesty. They are all men who worked for apparently responsible employers, and three witnesses,—one a merchant, one an employee of the Wright Company and one who lived with his parents in Evanston fifteen years,—testified they had known Steinbuch several years, and they played cards with him at the West End Pleasure Club in Evanston from about 8:30 the night of January 28 till after one o'clock in the morning, and as they all lived in the same locality they left the club together and walked with Steinbuch to the front of the building in which he lived, stood there and talked a few minutes, and Steinbuch went into his house.

Without further analysis or comment on the testimony, we are of opinion it did not prove the guilt of plaintiffs in error beyond a reasonable doubt. We have given the evidence careful consideration, and notwithstanding Black

identified Steinbuch as one of the robbers we cannot sustain the judgment. Black had never seen Steinbuch before, and while we do not question the witness' honesty and truthfulness, when all the evidence is considered we cannot hold otherwise than that it was not sufficient to establish guilt beyond a reasonable doubt. In such a case it is the duty of the reviewing court to reverse the judgment and order a new trial. *People* v. *Stoneking,* 289 Ill. 308; *People* v. *McMahon,* 254 id. 62; *People* v. *Wallace,* 279 id. 139; *People* v. *Allen,* id. 150; *People* v. *Cramer,* 298 id. 509.

Much complaint is made of the action of the trial judge in conducting an extensive examination of witnesses for the defense in such manner as to cause the jury to believe the court thought plaintiffs in error were guilty. After counsel for the State had finished the cross-examination of Poser the judge examined him at length, the questions and answers covering three pages of the abstract. The court also examined Steinbuch at still greater length. The court's examination of Bryant, an alibi witness, covers two pages of the abstract. He also examined one of the character witnesses at some length. This court has frequently held the examination of witnesses is the more appropriate function of counsel, and we have said conditions are rare which will justify the judge in conducting an extensive examination of a witness. Counsel for plaintiffs in error did not object to the action of the judge and preserve an exception to it, and that question is not before us for review. *People* v. *Lee,* 248 Ill. 64; *People* v. *Abrams,* 249 id. 619.

Because the evidence was not sufficient to establish the guilt of the plaintiffs in error beyond reasonable doubt the judgment is reversed and the case remanded for a new trial.

*Reversed and remanded.*