## TERRITORY OF HAWAII *v.* SAM VAN CULIN.

### Nos. 2469 and 2470.

ARGUED MAY 6, 1942.                    DECIDED JUNE 25, 1942.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY LE BARON, J.

The defendant was convicted upon two indictments tried concurrently before a jury in the court below, which charged him with the embezzlement of certain funds entrusted to him as an agent for the purpose of building an apartment house in Honolulu for his principal. The defendant has brought his appeal to this court, specifying thirty-five assignments of error, all of which have been

carefully studied. Only one need be here considered, *i.e.,* assignment number XXV. This assignment raises the question of whether or not the conduct of the trial judge was prejudicial error in that it deprived the defendant of a fair and impartial trial.

The record shows that while the defendant was a witness on his own behalf, the trial judge in the presence of the jury propounded fifty-four questions to him in the course of his direct examination and fourteen questions during the cross-examination, or a total of sixty-eight questions. It further appears from the record that both the attorney for the defense and the attorney for the prosecution were thorough examiners and able to fully develop the testimony as conscientious officers of the court without the assistance of the trial judge.

The examination of the defendant by the trial judge is too extensive to permit its transcription here. However, on every occasion when the trial judge took over the defendant as a witness, it is clear from the record that the court's examination was an interruption of the orderly development of the case by counsel. Indeed, the record shows that there was no patent reason to interfere. The answers of the defendant were clear and apparently he, at all times, understood the questions. In the course of these interruptive examinations, some of the questions were improper and may be characterized as argumentative.

It is stated by counsel for the defendant, and not denied by the appellee, that the trial judge exhibited an unfriendly attitude towards the defendant by his manner, repeated interruptions and by his lengthy examination of the defendant. We realize the great handicap we are under in that the record does not disclose the tone and inflection of voice nor the manner or attitude of the examiner. Faced with this situation, we can only point out that one question, in particular, asked by the judge while

interrupting the direct examination of the defendant, is readily susceptible of being made into a most condemning accusation by the slightest inflection of the voice. This is pertinent in that counsel for defendant claims that the question was delivered by the trial judge in an angry tone. The question reads: "When you knew you were using that money for your own personal use, you put that paragraph in there to lull him to sleep. What was the purpose of putting that in there when you knew you were using the money?"

The question is further improper in that it is not only an accusation but also a statement assuming facts. It climaxed an initial series of seven questions when the trial judge first interrupted the direct examination of the defendant wherein his attorney was developing the reasons why the defendant had segregated the money deposited with him for the construction of the apartments into two bank accounts, *i.e.,* one in the sum of $3,000 as a personal or suspense account, the other in the sum of $20,000 as a general or construction account. The defendant stated that this was done upon advice of counsel for the protection of himself and his principal and so advised his principal by letter. In this series of questions, the trial judge assumed that the personal account belonged to the principal and in questioning the reasons for the split, centered his examination upon why detailed reports had not been rendered as to the disbursements from the personal account.

One of the defenses, which the defendant was attempting to establish, was that he did not have a criminal intent to embezzle. In its development, he testified in effect that, because his services were in fact worth more than the stipulated five per cent commission he had reason to look forward to being paid an additional percentage or if his taking were unauthorized to have it ratified. In this

connection he testified in respect to a conversation with his principal wherein his principal volunteered the remark: "Well, Sam, if you are entitled to more money, I will see that you get more money. You are spending a lot of time and I expect to pay for it."

Interrupting this line of testimony on direct examination, the trial judge asked: "Why didn't you, in talking to the police or talking to him [the prosecuting witness] at the time you were found short, ever say anything about that until you came on the witness stand here to-day? Why didn't you say that to him? Why didn't you say that to the auditors at the time this audit was going on, if you intended to have more than five percent?"

Again in respect to the same situation, the trial judge interrupted the direct examination with the following four consecutive questions:

(1) "Why did you give him that note for $3700.00 if you had money coming to you, if you thought you were entitled to more money than the five percent you had taken out of this Construction Account? Why didn't you take the balance out of the Construction Account or make some arrangements for doing so?"

(2) "If you were entitled to any of that money that you held there, why in the world did you sign that $3,757.00 note? Why didn't you settle that feature before you gave him a promise to make that payment as the difference due from you to him?"

(3) "Why did you give him this note if you had things coming to you?"

(4) "From then on to July why didn't you sit down and discuss that feature with him?"

The trial judge interrupted the cross-examination with the following four questions but not in sequence:

(1) "Why did you advise him you were going to make a report every thirty days?"

(2) "Why did you take the money out without discussing it?"

(3) "Why did you take $2500.00?"

(4) "Why did you split it?"

It is significant that the subject of segregating the funds into two bank accounts was dealt with by the trial judge in the first series of questions during the direct examination of the defendant and is again harped upon in the above series of interruptions in the cross-examination. The question "Why did you split it?" became the sixty-eighth interruption. At this point, the defendant interposed an objection to the question as "prejudicing this defendant with the jury." The trial judge in answering the objection said: "The court has a right to develop or bring in any witness into the court-room to determine the evidence." Whereupon the defense further objected to the court's comment and moved for a mistrial which was denied and an exception was taken by the defendant's attorney.

The record does not disclose the same attitude towards the other witnesses nor were they treated in the same manner or subjected to the same degree of examination as was the defendant. On the contrary, at the outset of the prosecution's case, counsel for the defendant points out that the prosecuting witness was shielded unnecessarily from cross-examination by the attorney for the defense when upon a proper question propounded for the first time on cross-examination but touched upon on direct examination in respect to the best recollection of the witness as to the contents of a letter, the trial judge *sua sponte* said: "The witness is entitled to protection."

The defendant's counsel further points out that the record shows that the trial judge expressed his estimation of the defendant's credibility by writing in longhand across the bottom of an instruction requested by the prose-

cution and objected to by the defendant in the following words: "Given as requested over objection * * * The Court believing the defendant perjured himself." The record, however, does not disclose that this written expression was ever presented to the jury and counsel agree that it was not exhibited to them but in its stead a clean copy of the instruction was presented, and we must assume, therefore, that such was the case. However, the handwritten inscription was the ultimate expression of the court's attitude toward the defendant at the close of the trial. It is, therefore, material in reflecting the trend of the court's mind during the trial.

In a case of this character, it is essential that the safeguards, which the law has designed for the protection of the accused, be upheld and applied. It is no answer to state that the defendant's counsel did not from the outset object to the attitude of the trial judge as demonstrated by his extensive examination. We are not unmindful of the rule which requires that an effort be made in the trial court to prevent and to correct such errors when they occur. (*Territory* v. *Gagarin,* 36 Haw. 1.) But there may be instances, and this is one of them, where an objection would not be called for at the outset and later efforts would be entirely fruitless; when the error has been committed, no retraction could be sufficient to undo the harm; and the effort might magnify the very error sought to be avoided. The misconduct of a court is often cumulative in nature. This is especially true of a hostile attitude disclosed by an extensive examination. The behavior here takes the form of a gradual change from the function of a judge to that of a prosecutor. It may well be that during the course of this process, the acts of misconduct may not of themselves be objectionable as to form at the various times of their occurrence, but it is only after the process of change has sufficiently developed that the shift is ap-

parent and the matter becomes a subject of objection. It is at the point when the conduct becomes unbearable that an objection can ordinarily be interposed. Until that point is reached, counsel may assume that the learned judge may at any time desist and resume his rightful role as a judge. In the meantime, counsel should not be put in the position of being compelled to overemphasize in the minds of the jury his disadvantage by making an untimely objection and thereby possibly affront both court and jury. Knowing that the extent of the defendant's minimum period of punishment lies largely in the hands of the trial judge, counsel would naturally be impelled to avoid any conflict. Finally, counsel did reach the saturation point in the cross-examination of the defendant when the sixty-eighth interruption revived the line of questions commenced by the trial judge in the direct examination and, therefore, in effect his objection thereto as "prejudicing this defendant with the jury" went not merely to this one interruption but to the whole atmosphere against his client created by the trial judge's attitude. And, by objecting and excepting to the court's denial of his motion for a mistrial, he preserved in the record all the accumulation of the court's misconduct up to that point. The review of the record in respect to that conduct is, therefore, properly before us. (*People* v. *Stiglin,* 264 N. Y. Supp. 832; *People* v. *Mahoney,* 201 Cal. 618, 258 Pac. 607.)

The record speaks for itself. "It is almost an intellectual impossibility for a judge to engage in an examination of a witness on vital questions of the case on trial, without in some manner, and to some extent, indicating his own opinion. Every practitioner knows how eagerly alert jurors are to every utterance from the bench, and how sensitive is the mind of the juror to the slightest judicial expression." *Sharpton* v. *State,* 1 Ga. App. 542, 548, 549; 57 S. E. 929, 932. (See also *Dye* v. *Rathbone,* 102

W. Va. 386, 135 S. E. 274, and cases in 63 A. L. R. 106.) This is particularly the case where a rigorous, persistent and extensive interrogation by the trial judge breaks into the direct examination of a defendant, and tends to discredit the theory of the defense at the only probable opportunity of the defendant to present it, with questions normally identified with a prosecutor during cross-examination.

While a trial judge is not a mere moderator or referee, and he has a right at any time to ask questions for the purpose of eliciting the truth, it is an entirely unnecessary test of the highest degree of delicacy for him to conduct an extended inquiry upon matters vital to the defense by interrupting the direct examination of a defendant so that nothing in either the tone or inflection of the voice, the play of the features, the manner of propounding or framing the questions, or the course of the investigation pursued will indicate to the jury the trend of his mind. No person can successfully perform the function of prosecutor and judge at the same time. The two are inconsistent. (*The People* v. *Bernstein,* 250 Ill. 63, 95 N. E. 50; *The People* v. *Schultz,* 300 Ill. 601, 133 N. E. 379; *The People* v. *Steinbuch,* 306 Ill. 441, 138 N. E. 137; *The People* v. *Ney,* 349 Ill. 172, 181 N. E. 595, and cases cited in 84 A. L. R. 1172.)

The examination of witnesses is a primary function of counsel, and the cross-examination of the defendant rests with the prosecutor. When these functions are taken over by the judge, the attorneys are not only put in an embarrassing position but what is more important the jury may gather therefrom an indication of the court's opinion of the defendant's guilt. (*The People* v. *Bernstein, supra.*) A court will, therefore, find it much safer in criminal cases to permit counsel to conduct the examination of witnesses. (*Laycock* v. *The People,* 66 Colo. 441, 182 Pac. 880.)

The rule has been clearly laid down in this Territory by this court that "The trial judge should never assume the duties of counsel, but if he at any time becomes convinced that the witness has misunderstood the questions propounded by either counsel and as a result of such misunderstanding the import of his testimony is in doubt, it is not only his privilege but his duty to ask such questions of the witness as are necessary to remove such doubt and fully develop the truth of the case. Of course he should not intimate any opinion upon the facts, assume the prisoner's guilt, or use any expression calculated to prejudice the rights of either party." *Ter.* v. *Kekipi,* 24 Haw. 500, 504.

"The term 'fair trial' is often used, but not often defined. It is of broad scope. * * * It means a trial conducted in all material things in substantial conformity to law. [Authorities.]

"It consists not only in an observance of the naked forms of law, but in a recognition and just appreciation of its principles. [Authorities.] It means a trial before an impartial judge, and impartial jury, and in an atmosphere of judicial calm. [Authorities.] Being impartial means being indifferent as between the parties. [Authorities.] * * * It means that, while the judge may and should direct and control the proceedings, and may exercise his right to comment on the evidence, yet he may not extend his activities so far as to become in effect either an assisting prosecutor or a thirteenth juror." *Sunderland* v. *United States,* 19 F. (2d) 202, 216.

On the other hand, we want to make it clear that trial by attorneys, exclusive of the control of the judge, is not desirable. The trial judge has a duty to see that a fair trial is at all times maintained and that the truth is brought forward so that justice may prevail. Sections 3647 and 3648, R. L. H. 1935, provide trial judges with the

power to do that "which may be necessary for the promotion of justice in matters pending before them."

We, therefore, know of no rule or reason why a judge should not ask a proper and pertinent question for the purpose of eliciting competent and material testimony. But we also know of no rule which would permit a judge to assume the role of a prosecutor and subject an intelligent and responsive defendant to a prolonged interrogation upon matters vitally related to his defense and, in the course thereof, interrupt continually the direct and cross-examination of competent counsel before a jury. When a trial judge so indulges himself, no matter what his motives may be or what explanation or excuse may be offered, his conduct can have but one effect upon the jury and that is to impress them that the judge is convinced of the defendant's guilt. In the minds of the jurors, it places him in a hostile attitude towards the defendant and discredits in advance any defense that might be offered as well as destroying the attribute of judicial impartiality and the atmosphere of judicial calm so necessary in a fair trial. (*Smith* v. *State,* 12 Okla. Cr. 513, 159 Pac. 941.)

The essential requirements of a fair trial are simple and easily observed. Judges are as much judges for the defendant as for the Territory. They are supposed to sit fairly and impartially and to preserve scrupulously the legal rights of both the Territory and the accused and not to insure victory or defeat for either side. To become a partisan either for one or the other is to descend from the high position to which he, as judge, has been elevated and to assume the role of advocate. (*People* v. *Herman,* 7 N. Y. Supp. [2d] 560, 255 App. Div. 314; *Trent* v. *State,* 66 Okla. Cr. 302, 91 P. [2d] 790.)

The record presents an unfortunate situation. Appellee argues that because there is ample evidence to establish defendant's guilt, the deprivation of a fair trial does

not constitute reversible error. We cannot agree with this contention. Even the criminal most deserving of punishment is entitled, under our system, to a fair and impartial trial. More important than any verdict or judgment are the legal principles which govern the fundamental rights of all. The duty of the court to insure to a defendant in a criminal case a fair trial by jury is of transcendent importance. Justice is achieved only if that right is upheld. (*People* v. *Herman, supra; People* v. *Stiglin, supra.*)

In our opinion, the conduct of the trial judge was calculated to discredit the defendant's defense at the time he was attempting to present it and the requirements of a fair and impartial trial have been violated. The motion for a mistrial, therefore, should have been granted. The remaining assignments of error have been considered and are deemed to be without merit.

For the reasons stated, the judgment and sentence of the lower court are set aside and a new trial is hereby ordered.

*J. V. Esposito* (also on the briefs) for defendant, plaintiff in error.

*J. R. Desha,* Assistant Public Prosecutor, *K. E. Young,* Deputy Attorney General, *C. E. Cassidy,* Public Prosecutor (H. Lee with him on the briefs), for the Territory.