STATE OF IOWA, Appellee, v. JESSE ADAMS, Appellant.

**APPEAL AND ERROR:** Transcript Prevented by Death—Procedure.
1  When the making of a transcript of the reporter's notes is defeated by the death of the reporter, the appellant may set forth in the abstract a statement in detail of what he claims each witness testified to, and the appellee should not move to strike such alleged testimony, but should, in case he claims it is incorrect, enter a proper denial.

**HOMICIDE:** Evidence—Weight and Sufficiency. Evidence as to
2  identification of defendant reviewed, and held insufficient to sustain a conviction of murder in the first degree.

**WITNESSES:** Competency—Privileged Communications. Alleged communications to his physician by defendant in a murder trial held inadmissible.
3

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

FEBRUARY 12, 1924.

PROSECUTION for murder. There was a verdict of guilty of murder in the first degree, and a sentence of life imprisonment was imposed. The defendant appeals.—*Reversed.*

*C. R. Metcalfe,* for appellant.

*Ben J. Gibson,* Attorney-general, *O. T. Naglestad,* County Attorney, and *O. D. Nickle,* Assistant County Attorney, for appellee.

EVANS, J.—The facts upon which the prosecution is predicated are briefly that, on November 19, 1921, Adolph Lunis, a keeper of a grocery in Sioux City, was shot and killed, pursuant to a robbery committed by two colored men at 6 o'clock in the evening. The two men entered the store together. One of them approached Mrs. Lunis, who stood at her counter some distance from her husband, and asked to purchase some candy. The other approached the deceased, who stood at his counter counting money out of the cash drawer into a sack. This man is described as the larger man, and the other as the smaller. This man grabbed the sack of money out of the hands of Lunis, whereupon both men ran out of the building and down the street, pursued by Lunis, who fired a revolver at them several times. Lunis followed them down an alley, and had nearly overtaken the larger man when he received a mortal gunshot wound, and died almost instantly. The claim of the prosecution is that this defendant was the man who had approached the counter of Mrs. Lunis to buy candy. The main contention of the appellant upon this appeal is that the evidence was wholly insufficient to connect this defendant with such offense, and that, on the other hand, the overwhelming weight of the evidence as a whole showed that he was not one of the two men in question.

I. We are confronted at the outset with a motion by the State to strike all the evidence from the record. This motion was predicated, in the first instance, upon the alleged ground

that none of the evidence was preserved by a
bill of exceptions.  In resistance to such motion,
it is made to appear that the evidence was duly
preserved by a proper bill of exceptions, duly
signed and filed.  No transcript thereof, however, has ever been
filed.  The abstract, therefore, has not been predicated upon an
actual transcript prepared by the official shorthand reporter.
The reason for this failure is disclosed in the record.  The judg-
ment was entered in May, 1922.  The appeal was taken shortly
thereafter.  At the time of the taking of such appeal, both the
trial judge and his reporter were suffering from illness, which
resulted fatally in each case.  The judge died in July, and the
reporter in September.  Manifestly, therefore, the failure of the
appellant to obtain a transcript from the shorthand reporter
was without fault on his part.  It is made to appear also that a
transcript of the shorthand notes by any other reporter would
be very difficult, if not impossible.  Counsel for appellant in-
cluded in his abstract a purported statement in detail of the
evidence given by each witness as he asserted the same to be.
Under the circumstances here disclosed, we think it was an
appropriate course for appellant to pursue, in that it could
work no possible harm to the State, and might work a just solu-
tion of a difficult situation created by casualty which neither
party could have foreseen or could avoid.  The State, as appellee,
had the right to deny such abstract and to point out wherein
it was erroneous.  It had a right also to set forth the evidence
of any witness in whole or in part, as it claimed the same to be.
Under the rules, the amended abstract of the State would be
deemed true, unless the appellant could support a denial thereof
by a certification of the record.  Whether, in such an event, the
appellant could have had any other remedy than to accept the
correctness of the State's amended abstract is a question we
have no occasion to consider.  The ingenuity of the courts has
been exercised in various ways in various jurisdictions to ex-
tend relief in some form to an appellant under such circum-
stances.  We hold now only that the course here pointed out
was the proper and fair course for the State to pursue, and that
a motion by it to strike the appellant's abstract, in the absence

1. APPEAL AND
ERROR: tran-
script prevented
by death: pro-
cedure.

of any denial or amendment thereof, will not be entertained. Its motion is, accordingly, overruled.

II. The large question in this case is the sufficiency of the evidence to sustain the judgment of conviction. The defendant is a colored laborer, who is well known to many people

2. HOMICIDE: evidence: weight and sufficiency.

in Sioux City. The robbery occurred on the evening of November 19th. The defendant was arrested on November 22d. The circumstance that led to his arrest was that it was discovered by the officials that he had a gunshot wound upon his leg, which had been inflicted on or about the date of the robbery. The receiving of this wound was plausibly explained by the defendant, and with much corroboration, as having been accidentally received on November 18th. The wound was only a slight flesh wound. Having been a soldier in France in the late war, he was familiar with the methods of first aid, and he himself, with the aid of his companion, dressed the wound in the first instance. It was not sufficient to interfere with his ordinary activities. On the following night, pain developed therein, and he called a physician. Such is his explanation. His call of the physician brought the fact of his condition to the attention of the officials. He was thereupon arrested and charged with the crime. The only evidence of identification of the defendant as being one of the robbers is the following, from the testimony of Mrs. Lunis:

"Mr. Mann took me to the police station and showed me defendant, and I took him to be the same negro who wanted to buy the candy,—not the big one. He looked like the one. * * * Mr. Mann, the policeman, took me to the police station. He said they had one of the men who robbed the store. He did not have on an overcoat, and they put one on him, and he looks just like the smaller negro who asked for the candy."

As against this, the defendant became a witness in his own behalf. He testified that, on the evening in question, he was present at a church supper at the colored Baptist Church, arriving before 6 o'clock and remaining for two hours. His evidence was corroborated by that of several members of that church, with circumstantial details quite persuasive. More important than that was the testimony of William Roberts and Bert Foster. Roberts was a teamster, a white man, who lived

in the near neighborhood of the grocery.  He had been in the grocery store just prior to the robbery.  As he passed out, he met the two colored men coming in.  He knew both of them, and testified to their names.  He was close by when the shooting began in the store.  He saw the pursuit and the fusillade, and was one of those who rushed to the aid of Lunis.  He was manifestly a disinterested and candid witness.  He testified positively to his knowledge of the two colored men in question, and that the defendant was not one of them.  Bert Foster was another white man who also was a teamster living in the near neighborhood. Just before their entry into the grocery store, he had met and conversed with the two colored men, one of whom was owing him $6.00 for a set of harness.  They were then in the near vicinity of the store.  When he separated from them, they walked in the direction of the store.  Immediately thereafter, his attention was attracted to the shooting, and he also was present attempting to give aid to Lunis when the latter expired. He also testified positively that this defendant was not one of the two men.  A careful examination of the record satisfies us that the evidence is overwhelming, and very persuasive, to the effect that this defendant was not one of the two colored men who entered the store.  The two men named by Roberts have not been seen in the city since that date.

It is our conclusion that the conviction in this case is not fairly supported by the evidence, and that a new trial should have been granted on that ground, if on no other.

III.  In view of a new trial, we ought to call attention to one error assigned by appellant upon the admission of the testimony of the physician who was called by the defendant to dress his wound on November 19th.  The ruling of the court quite ignored the statute on privileged communications.  Alleged communications made by the defendant to the physician concerning his wound were not admissible; though in this case it was, perhaps, not very material nor very prejudicial.

3. WITNESSES: competency: privileged communications.

The judgment below is, accordingly, reversed.—*Reversed*.

ARTHUR, C. J., PRESTON and FAVILLE, JJ., concur.