THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. STANLEY KLVANA, Appellant.

Crimes — murder in first degree — evidence — appeal — duty of Court of Appeals to carefully scrutinize and analyze the evidence — insufficiency of evidence to establish connection with crime — identity of defendant as one of three men — testimony of witness clouded by more or less doubt and uncertainty insufficient as base for conviction of murder in first degree — evidence tending to exculpate defendant, though presenting only ordinary question of fact, of some weight on appeal where case for the prosecution is weak.

1. Upon appeal from a judgment convicting defendant of the crime of murder in the first degree, as a party to a plot to rob a bank, in the course of which robbery a person was killed, it is the duty of the Court of Appeals to carefully scrutinize and analyze the evidence

31

presented for the purpose of determining whether it warranted the jury in finding that beyond a reasonable doubt defendant was a party to the plot which resulted in the murder.

2. Evidence that defendant was actively engaged in the purchase of the automobile which subsequently became the means of conveyance of the murderers to the bank and of their escape therefrom, while providing a significant introduction and basis for other evidence connecting him with the crime, is not sufficient, by itself, to establish such connection where there is no evidence to identify or connect him with the murder from the time of such purchase until after the commission of the crime five days later.

3. Where defendant's connection with the murder turns upon the question whether he was one of three men who alighted from an automobile and the only real evidence as to his identity, in the last analysis, is an asserted similarity of his eyes to those of a man whom the witness momentarily saw looking at her through a window when she had no occasion to exercise a complete and careful scrutiny, and where, upon a reading of her entire testimony, it seems that the witness, acting upon a small foundation, has rather reasoned herself into the belief that defendant is the man whom she saw and that her attempted identification is the result of a conclusion thus developed and clouded by more or less doubt and uncertainty rather than an identification based upon reliable and decisive observations carried by a definite recollection to a conclusion whose correctness admits of no reasonable doubt, the conviction ought not to stand. And this is especially so where there was considerable evidence on the trial tending to exculpate defendant from participation in the crime, which, though presenting only an ordinary question of fact for the jury, strengthens the feeling of unwillingness to permit weak testimony on the part of the People to become the basis for the conviction of defendant.

(Argued December 7, 1925; decided January 12, 1926.)

APPEAL from a judgment of the Nassau County Court, rendered February 24, 1925, upon a verdict convicting the defendant of the crime of murder in the first degree.

*Joseph Lonardo* and *Anthony J. Argondizza* for appellant. The evidence fails not only to establish the existence of any plan or scheme or confederacy to rob the bank, but is utterly deficient in connecting the defendant as an aider and abettor in the commission of the crime, either by actual or constructive presence. (*People v.*

*Seppi,* 221 N. Y. 62; *People* v. *De Paulo,* 235 N. Y. 39; *People* v. *Miles,* 123 App. Div. 862; *People* v. *Kane,* 80 Hun, 322; *People* v. *Dunbar Contr. Co.,* 165 App. Div. 59; 215 N. Y. 16; *People* v. *Peckens,* 153 N. Y. 576; *Kelley* v. *People,* 55 N. Y. 565; *People* v. *Becker,* 215 N. Y. 126; *Com.* v. *Knapp,* 9 Pick. 495; *People* v. *Bliven,* 112 N. Y. 79.)

*Charles R. Weeks, District Attorney* (*Charles I. Wood* of counsel), for respondent. The conspiracy is properly, and indeed of necessity, provable by circumstantial evidence. The conspiracy itself may be inferred from proof of different acts and circumstances, of isolated acts of the conspirators, and of conduct which discloses a common design and concert of action. (*People* v. *Mc-Kane,* 80 Hun, 322; 143 N. Y. 455; *People* v. *Duffy,* 160 App. Div. 385; 212 N. Y. 57; *People* v. *Sweeney,* 213 N. Y. 37; *People* v. *Miles,* 123 App. Div. 862; 192 N. Y. 541; *People* v. *Mather,* 4 Wend. 229; *People* v. *Arnstein,* 157 App. Div. 766; *People* v. *Everest,* 51 Hun, 19; *People* v. *Brickner,* 8 N. Y. Cr. 217; *People* v. *Rose,* 101 Misc. Rep. 650; *Kelley* v. *People,* 55 N. Y. 565; *People* v. *Van Tassel,* 156 N. Y. 541; *People* v. *Peckens,* 153 N. Y. 576; *People* v. *Dunbar Co.,* 165 App. Div. 59; 215 N. Y. 16; *People* v. *Suffolk Co.,* 171 App. Div. 645.)

HISCOCK, Ch. J. This defendant has been convicted of murder in the first degree on the theory that he was one of several men who formed a plot to rob a bank and that in the course of this robbery a person was killed, and wherefrom followed defendant's responsibility for the homicide even though he did not directly participate in it. The case has been tried twice, there having been a disagreement of the jury on a former trial. It is a companion one of *People* v. *Ross* (240 N. Y. 692) and *People* v. *Slattery* (241 N. Y. 573), in each of which a judgment convicting the defendant of murder in the first degree has been affirmed by this court.

The outstanding facts which the prosecution claims to have sufficiently established, and upon which it rested its claims of defendant's guilt, are as follows:

One Slattery was the proprietor of a saloon on Long Island which was undoubtedly a headquarters for criminal activities of certain kinds and Klvana was his bartender. March 31, 1924, Klvana was the active participator in the criminal purchase of a stolen Buick car. April fourth, two or more men entered a bank at Bellmore, Long Island, for the purpose of robbing it and as they were making their escape from the bank they shot down in cold blood and killed an outsider who was entering the bank. Some or all of the murderers then fled in a Buick car and it is undisputed that the Buick car which these criminals used in going to and escaping from the scene of their crime was the same stolen car which this defendant had taken part in purchasing four days before. After the men had fled several miles from the bank the car broke down and was abandoned and at or before the time when this happened it was met by *a* Hudson car and a transfer of two or three men made from the Buick car to the latter. A few minutes later *a* Hudson car broke down by the home of some people named Bergold and there alighted from the car three men of whom Slattery was concededly one and Klvana, it is claimed by the People, was another.

On the introduction furnished by this record the defendant emerges into our view from a situation occupied by criminals and organized for criminal activities. As he thus appears there is nothing which predisposes one to any misplaced sympathy for him or conveys any idea that he would be deterred by any law-abiding disposition from engaging in any crime which promised abundant booty and small risks. But of course he is entitled to our painstaking scrutiny and analysis of the evidence presented to us for the purpose of determining whether it warranted the jury in finding that beyond a reasonable

doubt he was a party to the plot which resulted in the murder of which his associates and friends have been convicted. We are aided in this analysis by the perfectly fair attitude of the district attorney who, with a commendable conception of his duties, presents this case to us neither attempting to exaggerate its strong points nor trying to obscure its weaknesses.

The question which is thus presented to us must be very largely decided by the weight which may fairly be given to the evidence of two groups of witnesses. The first group gave the evidence tending to show that this defendant actively engaged in the purchase of the stolen Buick car which subsequently became the means of conveyance of the murderers to the bank and of their escape therefrom. We have not the slightest doubt that the evidence of these witnesses amply justified the jury in finding such criminal connection of this defendant with that transaction. But under the circumstances of this case that is not enough to sustain his conviction. There might be as the result of close succession in time or other incidents such a connection between the criminal purchase of a car and its use in the commission of a crime that a jury would be justified in saying that the one who helped to provide the instrument should be charged with responsibility for the crime in the commission of which it was subsequently used. That, however, is not this case. While the purchase of this car provides a significant introduction and basis for other evidence connecting this defendant with the crime it is not sufficient by itself to establish such connection.

There is no testimony which is claimed to identify or connect this defendant with the commission of the crime from March thirty-first until April fourth, when we come to the evidence given by the second group of witnesses in reference to the transfer of men from the murder car to a Hudson car and the subsequent appearance of a Hudson car at the Bergold farm with the attempt to

identify defendant as one of the men who alighted from that car. This evidence if the conviction is to stand must be the critical proof enabling the jury to say beyond a reasonable doubt that defendant was one of the murderers. And in order to accomplish this result it must have enabled the jury to find beyond a reasonable doubt *first* that the Hudson car which received a transfer of men from the Buick murder car was the same car which subsequently broke down at the Bergold farm, and *second,* that this defendant was one of the men who there alighted from the car.

` In the case against Slattery for complicity in this same murder a majority of this court concluded that the evidence did warrant the jury in believing that the Hudson car which received the transfer of murderers from the Buick car was Slattery's car and was the same one which subsequently appeared at the Bergold farm, and I shall make that assumption in this case. When, however, we come to the identity of the men who were in the car at the Bergold farm this case is much weaker than the one against Slattery. In his case there was no question whatever about his identity as the owner of the car and as being present at the farm. In the case against this defendant on the contrary there not only is no concession of his identity as one of the men at that place but under a denial of such identity there is, I think, such a failure of evidence sufficiently identifying him that we ought not to permit him to be executed under the present judgment. The attempted identification is made by Mrs. Bergold and her husband. We think the evidence of the latter may be disregarded as of substantially no probative value. While the witness on his direct examination did identify the defendant as being at his house with Slattery, on cross-examination he modified this statement by saying that " he looks like him." On the whole his evidence is too weak and inconclusive to be seriously regarded. The evidence given by Mrs. Bergold is stronger and the district attorney sum-

marizes it as being to the effect that one of the men who was present with Slattery in all respects resembled the defendant, but not making a positive identification of the defendant because of a change in the color of his face, although on redirect examination and examination by the court the witness did say that the eyes were exactly the same and the build the same except that the face was pale whereas it had been red. While this is as fair a summary as could be given in much condensed form of what the witness did ultimately say in various portions of her testimony, it is impossible properly to weigh her evidence without careful examination of all of it line by line. It is not desirable to incorporate such extended analysis in this opinion and we shall simply give in brief form our conclusions after such consideration of it. The decisive and basic idea of the attempted identification is an alleged similarity in appearance of the eyes of a man whom the witness saw at the farm and of the defendant. It is true at times she does speak of some general similarity in appearance of the two men. But there was nothing in the occasion which prompted any particular scrutiny of the three men as they stopped for the commonplace purpose of telephoning for help in removing a disabled automobile and there is nothing to indicate that the witness bestowed anything approaching conscious and thoughtful observation upon any features or appearance of the man whom defendant is said to resemble except upon his eyes, and that she did that only as he looked through a window at her as she was engaged in her housework. She was given an opportunity at the jail soon after the murder to identify defendant and there as here her attempted identification was based upon an alleged similarity of eyes and made hesitant by a change in complexion of his face from red to white.

Thus in a final analysis the conviction of defendant must basically rest upon the asserted similarity of his eyes to those of a man whom the witness momentarily

saw looking at her through a window when she had no occasion to exercise a complete and careful scrutiny. That is a pretty small basis upon which to rest a conviction and, as we read the testimony of the witness as it proceeds from the friendly atmosphere of direct and redirect examination to the hostile one of cross-examination with its more exacting and insistent questions, it seems to us that she, acting upon a small foundation, has rather reasoned herself, conscientiously we have no doubt, into the belief that defendant is the man whom she saw at the farm and that her attempted identification is the result of a conclusion thus developed and clouded by more or less doubt and uncertainty rather than an identification based upon reliable and decisive observations carried by a definite recollection to a conclusion whose correctness admits of no reasonable doubt. If this is a correct estimate of her testimony the conviction ought not to stand and the man be executed.

In addition to this weakness in the prosecution's case, there was considerable evidence on this trial which was not presented upon the Slattery trial tending to exculpate this defendant from participation in the crime. Of course if the evidence of the prosecution was sufficiently strong we should not feel controlled by the fact that it was substantially contradicted by evidence given in behalf of the defendant. That would present an ordinary question of fact for the jury especially when we consider the character of some of the witnesses who gave this testimony. But when there is weakness in the People's testimony the feeling of unwillingness to allow it to become a basis for the conviction of defendant is somewhat strengthened by the evidence given in his behalf.

We desire to leave no doubt that this case may be clearly distinguished from the cases against Ross and Slattery. In the former case as the court unanimously held there was evidence which amply justified the jury in finding that Ross was one of the men who directly

engaged in the robbery of the bank and in the homicide. While the evidence in the case of Slattery did not implicate him in the immediate commission of the crime the evidence against him as being a party to the plot and aiding in the commission of the crime was much stronger than in the present case and may be differentiated in many particulars from the testimony now before us for review.

We think that the judgment of conviction should be reversed and a new trial granted.

CRANE, ANDREWS and LEHMAN, JJ., concur with HISCOCK, Ch. J.; CARDOZO, POUND and McLAUGHLIN, JJ., dissent and vote for affirmance.

Judgment reversed, etc.