(No. 21959.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BEN MCPHERON *et al.* Plaintiffs in Error.

*Opinion filed December 22, 1933.*

GLEN PILLOW, GEORGE W. PILLOW, and R. E. SMITH, for plaintiffs in error.

OTTO KERNER, Attorney General, CHARLES C. MURRAH, State's Attorney, and J. J. NEIGER, for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Ben McPheron and Owens McPheron were indicted in the circuit court of Williamson county for robbery, each, in the perpetration of the offense, being armed with a dangerous weapon. A jury found them guilty as charged;

motions for a new trial and in arrest of judgment were denied, and they were sentenced to imprisonment in the Southern Illinois penitentiary. The defendants prosecute this writ of error for a review of the record.

On January 5, 1932, White Triplett, sixty-one years of age, was employed as a blacksmith at the Jeffery coal mine in Williamson county. Shortly after his return home from the mine, about 5:15 P. M. that day, two men appeared at his door. One of them inquired, "Is this where White Triplett lives?" Upon receiving an affirmative answer, the stranger expressed the desire to purchase a cow. Triplett replied that he had no cow for sale. After standing at the door a few moments, a drink of water was requested and both men were invited to the kitchen. Upon reaching that part of the house, Triplett placed a drinking cup in a bucket of water. Immediately one of the men ordered, "Put up your hands, we don't want a drink; your money is what we want." The first man pointed a revolver at Triplett's neck and the second a similar weapon at his side. Triplett's wife stood six or eight feet from her husband, and both were taken to another room and compelled to face the wall. One of the men searched the house and took a shot-gun valued at ten dollars, two spark plugs worth about seventy-five cents each, and forty cents in money. Upon leaving the house, the robbers commanded Triplett and his wife not to follow them, and they declared that they would leave the shot-gun at the garage. The gun, however, could not be found. The next day Mrs. Triplett took her husband's lunch to the mine, and on her return stopped at the home of Mrs. McPheron, a neighbor and the mother of the plaintiffs in error, to buy eggs. Owens McPheron opened the door, but turned his back when he discovered that the caller was Mrs. Triplett. The latter bought eggs from Mrs. McPheron, but did not mention the robbery to her nor to any other person until highway police officers called several days later. The robbers wore no masks, and

neither Triplett nor his wife was acquainted with the plaintiffs in error. Triplett identified Owens McPheron as one of the men who entered his house but said that it was dark and that he could not see the other man. Mrs. Triplett testified that Owens McPheron followed Ben McPheron into her house. The foregoing is the substance of the evidence introduced by the prosecution.

The plaintiffs in error called twelve witnesses. Of these, Lucille Berlotte, one of White Triplett's neighbors, who was acquainted with the plaintiffs in error, testified that shortly after 4:00 o'clock in the afternoon of January 5, 1932, she saw an automobile from which two men alighted; that they walked towards Triplett's house and that neither was one of the plaintiffs in error. The remaining eleven witnesses saw the plaintiffs in error at Royalton, about fourteen miles distant from Triplett's home, in the afternoon or evening of January 5, 1932. A brief review of their testimony follows:

Joseph Walker, who resided at Royalton, testified that the plaintiffs in error were engaged in selling meat from an automobile truck; that they came to his house on the afternoon in question; that about 5:00 o'clock Owens McPheron backed the truck into a ditch; that he, Walker, was compelled to attend a meeting of the local branch of the United Mine Workers of America and left home about 5:45 P. M.; that upon his return from the meeting the plaintiffs in error were still at his house and that they remained until the next morning. The union's record was offered in evidence and it showed that the meeting was held on January 5, 1932.

Clarence Bell, a coal miner, had been acquainted with the plaintiffs in error fifteen years. He saw their truck in a ditch at Royalton between 5:00 and 6:00 o'clock in the afternoon, January 5, 1932. Charles Spiller, a teamster, was called early in the evening to pull the truck out of the ditch, but was unable to do so. Later in the evening, about

9 :00 o'clock, Adolph Polinsky, the owner of a garage at Royalton, released the truck by means of a wrecker. The work required from twenty to thirty minutes. The meeting of the miners, Polinsky testified, was held the same evening. Roy Waldron saw the truck in the ditch near Joseph Walker's home. He witnessed Spiller's attempt to remove and later Polinsky's success in removing the truck from the ditch. William Boyd, who had been acquainted with the plaintiffs in error eleven years, saw the truck in the ditch about 5 :30 P. M. on the day in question. During the varying periods of time that these witnesses remained either to view, or to participate in, efforts to release the truck, the plaintiffs in error were present.

Five other witnesses, G. W. Edmonds, Andrew J. Harris, Charles Hendricks, J. T. Jones and Frank King testified that on January 5, 1932, they met the plaintiffs in error at Royalton and that they saw the truck in the ditch. Harris, Hendricks and King remembered that the miners' meeting was held in the evening. Hendricks and Jones saw the plaintiffs in error between 5 :00 and 6 :00 o'clock in the afternoon and Edmonds, Harris and King met them during the afternoon and evening. Edmonds and King saw the truck removed from the ditch shortly after 9 :00 o'clock. Jones had been acquainted with the plaintiffs in error for ten or twelve years and King for fifteen years. It was stipulated that Ben McPheron was forty-three and Owens McPheron forty-one years of age.

The defense interposed was that the plaintiffs in error, during the time the offense charged was shown to have been committed, were so far removed from the scene of the crime that they could not have participated in its perpetration. The burden to prove an alibi in a criminal case rests upon the person accused; and to maintain that defense he must show, in its support, facts and circumstances sufficient, when considered in connection with the other evidence in the case, to create in the minds of the jury a

reasonable doubt of the truth of the charge against him. *Carlton* v. *People,* 150 Ill. 181; *Hauser* v. *People,* 210 id. 253; *People* v. *Fisher,* 295 id. 250; *People* v. *Gormach,* 302 id. 332.

It was dark when the robbery was committed and Triplett and his wife were strangers to the plaintiffs in error. Triplett identified Owens McPheron but said he could not see the second man. His wife, on the other hand, testified that Owens McPheron followed Ben McPheron into her house. Although Mrs. Triplett stopped at the home of Mrs. McPheron, the mother of the plaintiffs in error, the next day, she did not mention the robbery and spoke to no one concerning it until highway police officers called several days later. Her course appears to be inconsistent with knowledge on her part that the plaintiffs in error committed the crime. No fact or circumstance in evidence confirms or strengthens the testimony of Triplett and his wife respecting the identity of the robbers.

Much countervailing testimony was introduced. One of Triplett's neighbors, late in the afternoon of the day in question, saw two men approach Triplett's house from an automobile, but they were not the plaintiffs in error. Eleven witnesses saw the persons accused at Royalton, a village about fourteen miles from Triplett's house, during the afternoon and evening of the fifth day of January. The plaintiffs in error were forty-three and forty-one years of age respectively and they were engaged in the sale of meat from a motor truck. By an accident the truck had been backed into a ditch, and their persistent efforts to remove the truck naturally attracted attention. A number of the witnesses saw the plaintiffs in error endeavoring to release the truck at the very hour Triplett and his wife were robbed in their home more than twelve miles distant. Certain witnesses fixed the date of the presence of the plaintiffs in error in Royalton by the meeting of the local union of miners and it was proved by the record of the union that

this meeting was held on January 5, 1932. Several of the witnesses had been acquainted with the plaintiffs in error for a number of years; no charge was made that any witness was partial to them and no witness was impeached or discredited.

The law has committed to the jury the determination of the credibility of the witnesses and of the weight to be accorded to their testimony; and where the evidence is merely conflicting this court will not substitute its judgment for that of the jury. (*People* v. *Chaney,* 342 Ill. 175; *People* v. *Herbert,* 340 id. 320; *People* v. *O'Grady,* 339 id. 263; *People* v. *Flanagan,* 338 id. 353). Where, however, the evidence on which a judgment of conviction in a criminal case is based is of an unsatisfactory character, or where, after a careful consideration of the evidence, there remains such a grave and serious doubt of the guilt of the person accused as leads to the conclusion that the verdict of the jury is the result of passion or prejudice, and not of that calm and deliberate consideration of the evidence which the law requires, the judgment should be reversed and the cause remanded. (*Keller* v. *People,* 204 Ill. 604; *Cunningham* v. *People,* 210 id. 410; *Dahlberg* v. *People,* 225 id. 485; *People* v. *Bolik,* 241 id. 394; *People* v. *Rischo,* 262 id. 596; *People* v. *Thomas,* 272 id. 558; *People* v. *Ahrling,* 279 id. 70; *People* v. *Zammuto,* 280 id. 225; *People* v. *Heep,* 302 id. 524; *People* v. *Langaas,* 339 id. 267; *People* v. *White,* 347 id. 576). The evidence in the present case so greatly preponderates in favor of the plaintiffs in error that it creates a grave and serious doubt of their guilt of the charge laid against them.

The judgment of the circuit court is reversed and the cause is remanded to that court.

*Reversed and remanded.*