STATE OF SOUTH DAKOTA, Respondent, v. STRAIN, Appellant.

(262 N. W. 237.)

(File No. 7772. Opinion filed September 9, 1935.)

*Charles Lacey,* of Sioux Falls, for Appellant.

*Walter Conway,* Attorney General, and *Herman L. Bode,* Assistant Attorney General, for the State.

WARREN, P. J.   Defendant was tried and convicted for the crime of murder committed while fleeing from the scene of a bank robbery at Kaylor, in Hutchinson county, S. D., on April 20, 1935, and sentenced to serve a life sentence in the state penitentiary.   His motion for a new trial was overruled, and he now appeals to this court.   The state's evidence in part is as follows:

In the early evening of April 17, 1933, a Charles Beatty was held up and robbed of his car, a maroon Chevrolet sedan, by two men just outside his home at Estherville, Iowa.   On April 20th, at 11 o'clock in the forenoon, three bandits held up and robbed the Farmers State Bank at Kaylor, S. D.   Two of the bandits entered the bank, while the third remained near the car, which was a maroon-colored Chevrolet.   While making their escape, the bandits shot and killed one Fred Voll, son of one of the bank officials, and wounded another man.   On April 21st the car used by the bandits was found abandoned at Delano, Minn., which car was identified by Beatty as the one stolen from him on the night of April 17th.   In June, 1933, the appellant was arrested at Sioux Falls, S. D., and charged with the robbery of the Kaylor bank and the murder of Fred Voll.

The record before us contains testimony of the numerous witnesses who testified for appellant, by which testimony appellant seeks to prove that he was not near Estherville, Iowa; nor Kaylor, S. D., on either the 17th or 20th of April, 1933, and that he therefore could not have committed the robberies.

The state produced five witnesses who positively identified appellant as the driver of the maroon Chevrolet.   According to their testimony, two of the bandits were well dressed; one of them being the driver of the car, with whom they talked.   The third bandit wore overalls.   Charles Beatty, from whom the car was stolen, identified appellant as one of the two men who took his car on the 17th, although he admitted that it was growing dark at

the time of the theft and that he didn't get a very good look at the faces of the men.

Appellant produced a number of witnesses from his home at Milbank, S. D., who positively testified that appellant had not left Milbank from April 17, 1933, to April 21, 1933, for any great length of time, and that they had seen him almost every day during the week of the robbery. From the record it appears that Floyd Strain was living at the City Hotel in Milbank with a Helen Mesler, and that one Martin Croymans, a man past fifty years of age, came in from the country and stayed with them at their rooms from Monday, April 17th, to April 21st. On April 17th, according to testimony, Floyd Strain and Helen Mesler had a quarrel which resulted in Strain's receiving a black eye and two scratches on his cheek and nose. On the 18th of April Helen Mesler went to Ortonville, Minn., to look for work and, failing to find any, returned to Milbank about noon, April 19th. Croymans testified that he and Floyd Strain went to Twin Brooks, a town some seven miles from Milbank, the afternoon of April 18th. While there, appellant cashed a check, signed by himself, on Martin Croymans at Croymans' request. This check is exhibit 5. They returned to Milbank that evening. On April 20th, according to appellant's witnesses, Strain was around the hotel and on the streets of Milbank during the day. On April 21st Sheriff Wilson of Grant county called on Strain in regard to the check he had written for Croymans on April 18th and which was marked a forgery by the bank on which it was drawn. Sheriff Wilson's testimony is, in part, as follows: "He (appellant) always wore work clothes. I don't remember that I ever saw him dressed up. * * * During the time from March 20th, 1933, to May 13th, 1933, Floyd Strain made no long trips from the City of Milbank, to my knowledge. * * * There was something the matter with his face. I don't know what it was. It seems to me after he left I thought he had been in a fight. * * * I have known Floyd Strain 15 or 16 years. I know his general reputation for peacefulness, quietude and inoffensiveness in the community where he lives. His reputation for peacefulness is good. I never heard anything against him with reference to quietude and inoffensiveness." Three other witnesses testified positively to having seen appellant in Milbank every day from April 17th to April 21st.

Tony Strain, appellant's brother, was also identified by the state's witnesses as one of the bank bandits. The defense produced certain witnesses, members of the Sioux City police force, who testified positively that Tony Strain was in jail in Sioux City at the time of the robbery. Certain records were produced which showed that Tony Strain was picked up by the Sioux City police on an investigation charge on April 17th (the day the car was stolen at Estherville, Iowa), and was confined in the jail at Sioux City until 3 or 3:30 of the afternoon of April 20th (the day of the robbery). One of appellant's exhibits is the order of discharge for Tony Strain's release. It is dated as of April 20, 1933, addressed to Sergeant Joe Young and signed by F. W. Spencer. Thomas Green, chief of detectives of the Sioux City police force, testified that he was holding Tony Strain for the Huron, S. D., officials, and as he was going out of town he gave orders to release Tony Strain at 3 or after in the afternoon of the 20th if the Huron officials had not come for him by that time. Green based the date of Strain's release on the fact that he, Judge Kenaston, and a C. C. Bledsoe made a trip to Burke, S. D., on April 20, 1933, and while eating a lunch at Wagner, S. D., heard the radio report of the Kaylor bank robbery. Returning to Sioux City that evening, Green learned that the Huron officials had not come for Strain and that he had been released according to orders at 3 or 3:30 in the afternoon.

A careful examination of the record in this case fails to reveal to us how Floyd Strain could have been present at the bank robbery in Kaylor, S. D., on April 20, 1933. If we are to believe the witnesses produced by the defense, and among them are numbered a county sheriff and Sioux City police officials, then the element of time would have prohibited the Strain brothers from participating in either the car robbery or the bank robbery. The distance from Milbank to Kaylor is some over 200 miles, and from Milbank to Estherville, Iowa, about 250 miles. Croymans testified that Floyd Strain was not away from him during those five days for more than two to three hours at a time, since they were living at Strain's rooms and eating their meals together.

In describing the appearance of the bandit who was driving the car at the time of the robbery, none of the witnesses for the state commented on having noticed anything wrong with the

bandit driver's face. In fact, when first taken to view the appellant, none of them admitted that it was he who had been one of the bandits. Later on they testified positively that appellant was one of the bandits, but Mr. Voll, the man whose son was killed, did not at any time identify appellant as having been one of the robbers. It is rather strange that if there was anything wrong with appellant's face the witnesses for the state failed to mention the fact. That there were marks on his face is shown by the testimony of the sheriff of Grant county, who saw him on the 21st of April, or the day after the robbery.

The facts in the present case raise a serious question as to appellant's guilt. We have often held that where there is an insufficiency of the evidence this court will not uphold the ruling of the trial court. In State v. Czerney, 61 S. D. 172, 247 N. W. 376, 377, we said: "The evidence in this case is at its best merely circumstantial, and to warrant a conviction for crime on circumstantial evidence alone, the circumstances taken together should be of a conclusive nature, and leading on the whole to a satisfactory conclusion and pointing to a moral certainty that the accused committed the offense charged, and it is invariably the rule of law that to warrant a conviction upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with each other and consistent with the guilt of the party charged, and such as cannot by any reasonable theory be true that the party charged be innocent. State v. Guffy, 50 S. D. 548, 210 N. W. 980."

In State v. Korth, 39 S. D. 365, 164 N. W. 93, 94, we held that the evidence was insufficient to connect the appellant with the offense charged, which evidence was mostly circumstantial, and said: "We are of the opinion that the circumstantial evidence adduced on the trial upon the vital issue of connecting the defendant with the commission of the offense charged was uncertain, weak, and unsatisfactory to such an extent that it should not be held sufficient to produce an abiding conviction of guilt beyond all reasonable doubt, of such a serious offense."

We have endeavored to marshal the facts as contained in the record of the testimony of various witnesses to sustain the conviction and are forcibly struck by the omission of any identification as the marks or peculiarities of the appellant. There is not even a

word as to the tone of the appellant's voice as one of the usual means of identification, nor a word as to any marks upon his face or person, excepting the testimony that he had large, round eyes, which of course could easily apply to any number of individuals when brought face to the bar of justice. It seems most peculiar that having carried on a conversation with the bandit driver of the car for some over ten minutes, none of the state's witnesses attempted to identify the appellant by his manner of speech or tone of voice. All of the circumstances, when considered together, tend to impair the weight to be given to the evidence of identification of the appellant, and as said in People v. Peck, 358 Ill. 642, 193 N. E. 609, 612:

"In weighing the evidence of identification of one stranger by another, the attendant circumstances, together with the probability or improbability of affording an opportunity for a definite identification, must be considered and weighed, for, after all, the identification of one person by another who has never seen him before is an opinion or conclusion of the identifying witness. People v. Fiorita, 339 Ill. 78, 170 N. E. 690. * * *

"In the review of a case in which it is urged that the defendant's guilt has not been proved beyond a reasonable doubt, we are not at liberty to shut our minds to uncontradicted evidence of good reputation, neither can we disregard the evidence of alibi where the only evidence contradicting it rests upon the identity of the defendant as one of the perpetrators of the offense charged. People v. De Suno, 354 Ill. 387, 188 N. E. 466. Where, from the entire record, there is a reasonable doubt of the guilt of the defendant, a judgment of conviction cannot be permitted to stand. People v. Burr, 356 Ill. 452, 190 N. E. 902; People v. McPheron, 354 Ill. 381, 188 N. E. 470; People v. Steinbuch, 306 Ill. 441, 138 N. E. 137."

Appellant contends in his second assignment of error that he was prejudiced by the court's sustaining the state's objection to asking the Grant county sheriff the following question:

"Q. At the time when you talked to him, what was his attitude or demeanor with reference to being scared, nervous, or excited?

"Objected to for the reason that it is incompetent, irrelevant

and immaterial and has no bearing on any of the issues in this case.

"Objection sustained."

Appellant states that it was material for him to show that he was not nervous, excited, or scared when visited by the said sheriff at his home on the day following said robbery, as tending to show that the appellant was innocent and had a clean conscience, and that the appellant was prejudiced by not being allowed to show such fact. He further contends that this testimony was material and relevant not only as a general principle of law, but that it would refute the testimony of one of the state's witnesses who testified that the driver of the car was very nervous and excited during the robbery. We believe that in the prosecution for a crime, whenever the conduct and demeanor of the accused is relevant to the issue and whenever such conduct becomes material, testimony may be admitted to show such conduct and state of mind. Quite a clear and concise statement governing the admissibility of this class of evidence may be found in Wharton on Criminal Evidence, vol. 1 (11th Ed. 1935) p. 425, § 315, as follows: "It is clear that facts and circumstances in every transaction exhibit two phases: First, relevancy to establish an ultimate fact; second, an explanation of the facts and circumstances themselves that is relevant against the ultimate fact. In this view the entire transaction should go before the court, the accused's whole conduct—his utterances, his acts, and demeanor—should be received and his explanation of his acts, conduct, and demeanor should go in to rebut or negative the case against him. Any exclusion of this sort renders the decisions of the various courts indefensibly inconsistent and places an arbitrary limit upon the accused, which is unjust in view of the freedom allowed the prosecution in adducing facts and circumstances against him."

The exclusion of this evidence may have had a far-reaching effect upon the jurors, and we cannot say that the appellant may not have been prejudiced by having been prohibited from having the witness testify as to appellant's acts, demeanor, and conduct when the sheriff called upon him on the 21st day of April, 1933.

Considerable has been written about the identification by witnesses who base their opinion on similarity of faces, eyes, and

other distinguishing features of the accused, yet very few cases decided by the courts are alike and similar in detail. In this case the identification of the defendants with the commission of the offense charged was uncertain, weak, and unsatisfactory to such an exent that it should not be held sufficient to produce an abiding conviction of guilt, beyond all reasonable doubt, of such a serious offense. In this case there was considerable excitement, and some of the witnesses attempted to identify the accused by impressions gathered in haste. We have therefore examined the evidence in this case with much care. In People v. Seppi, 221 N. Y. 62, 116 N. E. 793, 795, the court, referring to identification of defendants, said: "Opinions expressed of the identity of a defendant, particularly when they depend upon impressions obtained in haste and excitement, should not be bolstered by self-serving performances of no probative value and yet strongly calculated to influence a jury of laymen, not versed in the rules of evidence." We are unable to escape from the conclusion that there is here a grave doubt as to the identification of the appellant. See State v. Adams, 197 Iowa 331, 197 N. W. 64; People v. Klvana, 241 N. Y. 481, 150 N. E. 523; and especially the concurring opinion of Justice Day in Vinciquerra v. State, 127 Neb. 541, 256 N. W. 78, 79, at page 83. This, together with the fact that the defendant was deprived of presenting to the jury certain evidence as hereinbefore pointed out, compels us to grant a new trial in this case. The view that we have taken of the record makes it unnecessary to consider other errors assigned.

For the foregoing reasons indicated, the order and judgment appealed from are reversed.

POLLEY, J., concurs.

CAMPBELL, J., concurs specially.

ROBERTS and RUDOLPH, JJ., dissent.

CAMPBELL, J. (concurring specially). The robbery and killing here involved occurred at Kaylor in Hutchinson county, S. D., shortly before noon on Thursday, April 20, 1933. Less than twenty-four hours thereafter, and during the forenoon of Friday, April 21, appellant was at his place of residence at Milbank in Grant county, S. D., where he was accosted and interviewed with reference to a matter entirely foreign to this case by the sheriff

of Grant county, S. D., whom he knew to be such sheriff. Appellant produced the sheriff of Grant county as a witness and offered to show by him that he (appellant) did not present the appearance of being scared, nervous, or excited when accosted by the sheriff the morning after the crime. The evidence thus offered was excluded by the court upon objection on the part of the state. The state's witness Freitag had already testified that the participant in the robbery, whom he identified as the appellant, was "very excited and awful nervous." It would seem a legitimate deduction and quite in accord with human experience that a participant in a crime who exhibited marked and noticeable excitement and nervousness during the commission thereof might likewise exhibit nervousness and excitement when suddenly and unexpectedly summoned to an interview with the sheriff the next morning. If appellant did not exhibit such nervousness or excitement, then I believe, under the circumstances, it would be permissible for the jurors to draw from such fact an inference of consciousness of innocence on the part of appellant. I realize that courts have not been as liberal in admitting conduct of an accused as a basis for an inference of consciousness of innocence on his part as they have in admitting conduct when offered by the state as a basis for an inference of consciousness of guilt. The matter is discussed in Wigmore on Evidence (2d Ed.) §§ 174, 293, and I believe the sounder view is there expressed as the opinion of the learned author in the following language: "Let the accused's whole conduct come in; and whether it tells for consciousness of guilt or for consciousness of innocence, let us take it for what it is worth, remembering that in either case it is open to varying explanations and is not to be emphasized. Let us not deprive an innocent person, falsely accused, of the inference which common sense draws from a consciousness of innocence and its natural manifestations." I am therefore of the opinion that the court erred in excluding the appellant's offer of this testimony.

The question then arises as to whether or not such error was prejudicial. Certainly mere technical error should not work a reversal unless the substantial rights of the accused have been adversely affected. Section 5044, Rev. Code 1919. In the instant case, however, the only evidence in any wise connecting appellant with the crime charged is the testimony of several eyewitnesses who

saw one of the robbers and talked with him briefly, and who identify appellant as being, in their opinion, the man whom they saw and with whom they talked. None of these witnesses know appellant or had ever before seen him. Their observation was casual and of brief duration. Immediately supervening came a period of admitted excitement, turmoil, and emotional stress. It was not until after the arrest of appellant, approximately ten weeks later, that they saw him in jail and first attempted any identification. There is no ground whatever for imputing to these witnesses any intentional false swearing or bad faith. A careful study of the entire record, however, compels me to the conclusion that reasonable, intelligent, and conscientious men might very well differ in opinion as to whether or not these witnesses who undertook to identify appellant as a participant in the crime were honestly mistaken in such identification. Conceding that the testimony of such witnesses, if believed by the jury, sufficiently supports the verdict, and conceding that under our system the weight of evidence and the credibility of witnesses generally are for the jury rather than for an appellate court, at least up to the limits of reasonable belief, nevertheless I think it must be said that this case is a very close one on the vital and controlling fact of identity. It seems to me so close a case that any additional bit of evidence justifying or permitting an inference favorable to the appellant might very possibly have turned the scales in the mind of one or more of the jurors and might have been enough to cause such juror or jurors to entertain a reasonable doubt as to the guilt of appellant. As before stated, I believe the exclusion of the offered evidence was erroneous. Under the circumstances disclosed by this record, I am unable to say that the erroneous exclusion of any evidence offered by appellant justifying, even though not requiring, an inference favorable to him, was error without prejudice.

I am therefore of the opinion that in excluding this evidence the trial court erred to the prejudice of appellant, and consequently I concur in the view that the judgment and order appealed from should be reversed and the cause remanded for a new trial.

RUDOLPH, J. (dissenting). Five witnesses positively identified the defendant as a participant in the crime charged. Certainly, it seems to me, this made an issue for the jury, and that

this court should adhere to its oft-repeated statement that a verdict rendered upon conflicting evidence should not be disturbed. The jury being the exclusive judges of the credibility of the witnesses and the weight of the evidence, this court should not step in and give full credence to the testimony of the defense witnesses, wherein it was attempted to establish an alibi, and set aside and hold for naught the testimony of the five witnesses who positively identified this defendant as being a participant in the crime charged.

I seriously doubt the soundness of the rule which would make it error to exclude the testimony offered by defendant regarding his appearance when visited by the sheriff of Grant county the morning, after the crime was committed. However, conceding the soundness of such rule in this case, I am convinced that the error was without prejudice to any of the rights of this defendant. True, an objection was sustained to the question asked the sheriff regarding the attitude or demeanor of the defendant as to being scared, nervous, or excited when interviewed by the sheriff on that particular morning. However, in the subsequent direct examination of this witness, he testified very definitely, without objection, that he didn't notice anything out of the way about Floyd Strain's conduct or demeanor at the time of this interview.

The trial of this case occupied three days' time. I am convinced that the sustaining of the objection to this one question did not in any way influence the verdict of the jury, and that, if it were error to sustain the objection to this question, this error was without prejudice to any right of defendant.

I am authorized to state that ROBERTS, J., concurs in the views above expressed.